SATURNINO CRUZ CRUZ, demandante y recurrido, *v.* RAMONITA IRIZARRY TIRADO, demandada y recurrente.

*Número:* R-78-202      *Resuelto:* 5 de octubre de 1978

*Hernán Longoria,* abogado de la recurrente; *E. Vélez Vargas,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Ante la Sala de Mayagüez presentó el recurrido Saturnino Cruz demanda sobre división de bienes gananciales en la que solicita se saque a remate la casa vivienda propiedad de la extinta sociedad conyugal constituida con su anterior esposa Ramonita Irizarry. De la reconvención que ésta interpuso, y que no fue negada por el demandante, transcribimos las siguientes alegaciones:

"Por vía de reconvención la demandada expone, alega y solicita:

1. Que el día 1 de diciembre de 1976, la reconvencionista obtuvo la patria potestad y custodia de seis menores hijos habidos en el matrimonio que la sentencia de esa fecha, dictada por este mismo Hon. Tribunal, disolvió.

2. Que desde que se construyó la casa que se describe en la demanda, y la de madera que existía antes donde ésta se construyó, la reconvencionista ha vivido en la misma con todos los hijos habidos en el matrimonio con el reconvencionado.

3. Que sus hijos menores no conocen otra residencia, ni tienen ninguna otra, que no sea la que se pretende vender por el demandante reconvencionado.

4. Que Saturnino Cruz Cruz, tiene otra residencia donde vive como marido y mujer con otra señora, no teniendo ninguna otra la aquí reconvencionista.

5. Que de este Hon. Tribunal declarar con lugar la demanda instada por Saturnino Cruz Cruz en contra de la reconvencionista, ésta por ser totalmente insolvente tendría que abandonar su residencia y quedar desamparada con sus seis menores hijos.

6. Que por haber sido cónyuge inocente en la acción de divorcio, por tener la patria potestad y custodia de sus seis menores hijos, por no tener otro bien alguno que la propiedad que ocupa como su residencia y la de sus menores hijos, ni medios de fortuna algunos que le permitan proveerse de otra vivienda adecuada para sí y sus hijos, y por tener otro hogar el demandante reconvencionado, se suplica de este Hon. Tribunal, declare que

la propiedad a que se contrae esta demanda constituye el hogar seguro de la demandada reconvencionista y la de sus seis menores hijos, y lo constituirá hasta que el menor de ellos alcance su mayoridad.

7. Que la demandada reconvencionista ha permanecido soltera desde que se disolvió el único matrimonio contraído por ella con el demandante, y no vislumbra posibilidad de que lo vuelva a contraer.

8. Que por motivo de su escasa instrucción académica y por su obligación de atender a su menores hijos, la reconvencionista tampoco puede facilitarse un empleo que le permita generar ingresos para conseguir otra vivienda."

El demandante y la demandada Ramonita Irizarry estuvieron casados 23 años, desde el 18 mayo, 1953 hasta el 1° diciembre, 1976 en que se dictó sentencia de divorcio. La casa objeto del pleito es una vivienda de concreto, de 32 pies de frente por 22 de fondo, con tres cuartos dormitorios, sala, cocina, comedor e instalación sanitaria, medio balcón hacia dos lados y planta baja con facilidades sanitarias, está enclavada en solar propio de 1.24 cuerdas en el Barrio Caín Bajo de San Germán, se halla libre de gravámenes, y tiene un valor en el mercado de $30,000.00.

Celebrado el juicio, la sala de instancia dictó sentencia desestimando la reconvención de la demandada y con ella su reclamación de hogar seguro; e invocando el mandato del Art. 1295 del Código Civil (31 L.P.R.A. sec. 3621) al efecto de que "mediante la sociedad de gananciales, el marido y la mujer harán suyos por mitad, al disolverse el matrimonio, las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio", ordenó la venta del inmueble en pública subasta por precio mínimo de $30,000 y la división por partes iguales entre los ex cónyuges del producto de la subasta.

Al recurrir la demandada, notamos conflicto entre dicha sentencia y nuestras decisiones en *Carrillo* v. *Santiago*, 51 D.P.R. 545, 547 (1937) e *Irizarry* v. *García*, 58 D.P.R. 280 (1941), por lo que expedimos la siguiente orden:

"La parte demandante y recurrida tendrá un término hasta el 18 de julio de 1978 para comparecer a mostrar causa por la que no deba reconocerse un derecho equitativo de hogar seguro en el inmueble objeto de litigio, y paralizar toda liquidación de dicha propiedad por el tiempo que la esposa demandada y los 6 hijos del matrimonio hayan necesidad de esa protección."

El escrito del recurrido no aduce razón fundada para abandonar la regla de *Irizarry,* supra, que adjudicó el hogar seguro a la esposa "sin perjuicio de que el marido divorciado pueda reclamar la mitad de dicha propiedad cuando los hijos hayan llegado a la mayoridad o cuando por cualquier otra causa autorizada por la ley, la referida propiedad deje de constituir el hogar seguro de la demandada contrademandante y sus hijos." *Ibid.,* pág. 281.

La Ley de Hogar Seguro que es la Núm. 87 de 13 mayo, 1936 ordena en su Art. 1° (31 L.P.R.A. sec. 1851) :

"Toda persona que sea jefe de familia tendrá derecho de poseer y disfrutar, en concepto de hogar seguro, una finca cuyo valor no exceda de mil quinientos (1,500) dólares, consistente en un predio de terreno y los edificios enclavados en el mismo, de cualquier estancia, plantación o predio de terreno, que le pertenezca o posea legalmente, y estuviere ocupada por ella o por su familia como residencia. Este derecho de hogar seguro es irrenunciable; y cualquier pacto en contrario se declara nulo, excepto que dicho derecho de hogar seguro podrá ser renunciado en todos los casos de hipotecas aseguradas por . . . ."

Y su Art. 3 (31 L.P.R.A. sec. 1853) dispone:

"La exención establecida en la sección anterior continuará subsistente después de la muerte del jefe de familia a beneficio del cónyuge supérstite mientras éste continúe ocupando dicho hogar seguro, y después de la muerte de ambos cónyuges a beneficio de sus hijos hasta que el menor de éstos haya llegado a la mayoridad. En casos de que el marido o la mujer abandonase su familia la exención continuará a favor del cónyuge que ocupe la finca como residencia; y en caso de divorcio el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso."

■ Este es uno de los casos(¹) en que por mandato del legislador la equidad se incorpora como parte del Derecho positivo y deja libertad al juzgador para que echando a un lado el rigor jurídico prefiera a la solución estrictamente legal, una con sentido moral y humano que haga especial justicia al caso concreto ante él. "La equidad," ha dicho Castán, "implica más que una justicia abstracta una justicia individualizada, y más que una justicia estrictamente legal, una justicia de tipo natural y moral." (²) La equidad remite el proceso decisional al mundo puro de los valores en busca de la recta razón y del tuétano racional y moral del Derecho donde reside el valor supremo de justicia.

■ La preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Su reclamación de gananciales en la vivienda que aloja a esta familia quedará paralizada por el tiempo que subsistan las circunstancias que le dan calidad de hogar seguro y mientras la recta razón de equidad ampare el derecho de sus ocupantes. Hemos reconocido que el derecho de dominio no es atribución absoluta de su titular y que está supeditado a intereses sociales de orden superior, significativamente la protección de la vivienda. Hemos sostenido que en Puerto Rico, como en toda sociedad civilizada, hay un emi-

(¹) Nuestro Código Civil recurre a la equidad en otros casos especiales: El Art. 1108 ordena al juez modificar "equitativamente" la pena en las obligaciones; el Art. 1581 admite la impugnación del tercero a cargo de designar la parte de cada socio en las ganancias y pérdidas, sólo cuando "evidentemente haya faltado a la equidad", y el Art. 1056 faculta al juez para moderar, según el caso, la responsabilidad que proceda de negligencia.

(²) Derecho Civil Español, Común y Foral, Tomo 1°, Vol. 1°, pág. 373, Décima Edición (1962). Sostiene el ilustre tratadista el concepto integrado de la equidad como adaptación del Derecho a la realidad, fundado en la idea cristiana de mitigación del rigor de la ley para un caso particular (humanitas, pietas, benignitas); y en la idea aristotélica de norma individualizada, adecuada a las singularidades de un caso concreto (epiqueya de los griegos). Cf. Silva v. Comisión Industrial, 91 D.P.R. 891, 898 y ss. (1965).

nente interés social en proteger y fomentar la adquisición por cada familia de una vivienda segura, cómoda y adecuada, reflejado en una política pública de claros perfiles en la profusa legislación aprobada a lo largo de los años. *Hernández* v. *Méndez & Assoc. Dev. Corp.*, 105 D.P.R. 149 (1976). La equidad que gobierna el presente caso halla amplia base en la citada premisa de nuestro derecho positivo para postergar la acción civil sobre liquidación de sociedad de gananciales, en cuanto afecte el inmueble ocupado como hogar seguro, al derecho de la jefe de familia recurrente a esta vivienda.

■ El límite de $1,500 señalado por la Sec. 1851 del Título 31, *Leyes de Puerto Rico*, a la exención de hogar seguro opera exclusivamente contra acreedores del jefe de familia, mas no restringe ni representa el valor del hogar seguro que en caso de divorcio se conceda a uno de los cónyuges, porque en esta última eventualidad no hay transmisión de dominio sobre el inmueble ni alteración del título de propiedad, sino una autorización por el tribunal para uso del inmueble en satisfacción de una legítima necesidad de la familia. *Quiñones* v. *Reyes*, 72 D.P.R. 304, 308 (1951).

■ No debe entenderse esta decisión como imponiendo el reconocimiento automático del hogar seguro en todo caso sobre liquidación de gananciales en que se reclamare tal exención. La solución en equidad se abraza a la justicia de cada caso, sin generalizar. Las peculiares circunstancias de ser esta una familia numerosa de la que forman parte seis menores de edad, la falta de ingresos y la conocida escasez de vivienda adecuada que es uno de nuestros problemas contemporáneos, inclinan la equidad de este caso, el valor supremo de justicia, hacia la protección del hogar seguro contra su desintegración implícita en la reclamación de gananciales del recurrido. Se cumple así el mandato de derecho positivo encarnado en el Art. 3 de la Ley de Hogar Seguro (31 L.P.R.A. sec. 1853) y queda vindicada la fundamental obligación legal

y moral del padre recurrido de proveer albergue a su familia inmediata.

*Se expedirá el auto y se dictará sentencia de conformidad. Revocada.*

El Juez Asociado Señor Martín emitió opinión disidente a la cual se une el Juez Asociado Señor Torres Rigual.

—O—

Opinión disidente del Juez Asociado Señor Martín a la cual se une el Juez Asociado Señor Torres Rigual.

San Juan, Puerto Rico, a 5 de octubre de 1978

La opinión del Tribunal desnaturaliza el concepto de "hogar seguro" plasmado en la Ley Núm. 87 de 13 de mayo de 1936, según enmendada. Dicho concepto se originó en nuestra jurisdicción mediante la Ley de 12 de marzo de 1903, en el idioma inglés, que contenía disposiciones sustancialmente iguales a las envueltas en este caso. Desde su origen la ley se tituló "Ley para definir el 'homestead' (hogar seguro) y para exentarlo de una venta forzosa." Luego fue incorporada, en español, al Código Civil como Arts. 541 a 544, por la Comisión Codificadora, mediante enmienda a la disposición final del Código Civil por virtud de la Ley Núm. 48 de 28 de abril de 1930. En 1936 se derogó dicha ley de hogar seguro, aunque no se hizo referencia al Código Civil, pero en lo que respecta a las disposiciones aplicables al caso de autos, y especialmente la definición de lo que constituye hogar seguro, no hubo cambios de sustancia. Esta última ley es la que está actualmente en vigor.

En 1903 se definió el *homestead* u "hogar seguro" en lo que es aquí pertinente, como:

"Que todo jefe de familia, que tenga familia, tendrá derecho a una finca de 'homestead', *hasta el valor de quinientos dólares ($500)* en una estancia, plantación o predio de terreno y en los edificios contenidos en el mismo, que le pertenezca o que posea legalmente, en virtud de arrendamiento o en otra forma, y estu-

viere ocupado por él o ella como su residencia, y dicho 'homestead' y todo derecho o título sobre el mismo estará exento de embargo, sentencia, exacción o ejecución . . . ." Compilación de los Estatutos Revisados y Códigos de Puerto Rico hasta el 9 de marzo de 1911 (traducción de la Ley de 12 de marzo de 1903, sec. 1). (Énfasis suplido.)

Más adelante, la Ley de 1903, explicaba la duración o continuidad del derecho a "hogar seguro" en la forma siguiente:

"Que dicha exención continuará después de la muerte del jefe de familia, a beneficio del esposo o esposa superviviente, mientras él o ella continúe ocupando dicho 'homestead', y después de la muerte de ambos, esto es del esposo y de la esposa, a beneficio de sus hijos, hasta que el menor de estos haya llegado a la edad de veinte y un años; en caso de que el esposo o la esposa abandonase su familia la exención continuará en favor del cónyuge que ocupe la finca como residencia, y en caso de divorcio, el tribunal que lo conceda, *podrá disponer del 'homestead'* según la equidad del caso." *Id.,* sec. 2. (Énfasis suplido.)

Al reafirmar el derecho de *homestead* a los fines de ejecución de la propiedad en pública subasta la Ley de 1903 consigna:

"Que no se hará venta alguna, por virtud de sentencia o ejecución, de ninguna estancia, plantación o predio de terreno, y de los edificios contenidos en el mismo, cuando se reclamare u ocupare dicha finca como 'homestead', *a menos que se obtenga* por ella una suma mayor de quinientos dólares ($500). . . . [E]l excedente sobre [dicha] suma . . . se pagará al acreedor y la suma de $500 se paga⁻ ' al deudor . . . . Disponiéndose, que esta sección no será de aplicación a ninguna venta que se haga para obligar al pago de contribuciones que adeude dicha propiedad, o a la deuda o gravamen incurrido para (por) la compra de la misma, o para las mejoras que en ella se hicieren, o cuando se hiciere dicha venta en virtud de traspaso en que se haga renuncia de la exención que dispone la sección 3 de esta ley."

Actualmente, el derecho de hogar seguro está definido sustancialmente igual a la definición de 1903. El texto de la ley vigente, aplicable al caso de autos, es como sigue:

"Toda persona que sea jefe de familia tendrá derecho de poseer y disfrutar, en concepto de hogar seguro, una finca *cuyo valor no exceda de mil quinientos ($1,500) dólares*, consistente en un predio de terreno y los edificios enclavados en el mismo, de cualquier estancia, plantación o predio de terreno, que le pertenezca o posea legalmente, y estuviere ocupada por ella o por su familia como residencia." (Énfasis suplido.)

Y en cuanto a la duración o continuidad del derecho a hogar seguro, la ley actual provee lo mismo que la de 1903, y consiguientemente retuvo la disposición que regula la situación en casos de divorcio al expresar ". . . y en caso de divorcio el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso." En adición, la ley vigente permite la renuncia del derecho de hogar seguro, que antes estaba restringida, para facilitar la obtención de financiamiento y préstamos asegurados o garantizados por ciertas agencias gubernamentales federales y estatales.

Del texto de las disposiciones de Ley citadas surge el propósito del legislador de proteger contra las reclamaciones de acreedores las propiedades ocupadas como su residencia por un jefe de familia cuyo valor no exceda de $1,500 (originalmente $500) ; y de exceder dicha suma, el de proteger la suma de $1,500 (originalmente $500) para beneficio del deudor ocupante de la propiedad, y poner a disposición del acreedor el exceso sobre la referida suma. En otras palabras, la vivienda u "hogar seguro" quedaba asegurado para el deudor y su familia siempre y cuando que la propiedad utilizada como residencia no excediere de un valor de $1,500, y en caso de exceder de dicho valor, el jefe de familia solamente podría reclamar hasta la suma de $1,500 pero no el derecho a ocupar la propiedad.

El beneficio del hogar seguro se extiende al cónyuge supérstite después de la muerte del jefe de familia mientras ocupe la propiedad como vivienda, y muerto aquél pasa a beneficio de sus hijos hasta que el menor de éstos haya llegado a la mayoría de edad. 31 L.P.R.A. sec. 1853.

El legislador previó que en variadas circunstancias pudiera surgir dificultad en cuanto a quién correspondería el derecho al hogar seguro por lo que delineó su alcance en la Sec. 3 de la Ley Núm. 87—31 L.P.R.A. sec. 1853, a saber:

1. Al morir el jefe de familia continuaría subsistente la exención de hogar seguro a beneficio del cónyuge supérstite mientras éste continúe ocupando dicho hogar seguro.

2. Si murieren ambos cónyuges quedaría a favor de sus hijos hasta que el menor de éstos haya llegado a la mayoridad.

3. En casos en que el marido o la mujer abandonase su familia permanecería a favor del cónyuge que ocupe la finca como residencia.

4. Cuando se trate de persona no casada, de quien dependan ascendientes y descendientes hasta el cuarto grado, padres de crianza e hijos adoptivos o de crianza, y por tanto sea jefe de familia, la exención continuará, después de la muerte de dicho jefe de familia, a beneficio de sus indicados familiares mientras éstos continúen ocupando dicho hogar seguro hasta que el menor de dichos dependientes haya llegado a la mayoría.

5. Y, por último, en caso de divorcio el tribunal que lo conceda deberá disponer de la exención del hogar seguro según la equidad del caso.

El caso de autos surge como consecuencia de un divorcio. La cónyuge inocente, dentro del procedimiento de la división de los bienes gananciales, solicita del tribunal que se declare hogar seguro la propiedad que ella ocupa con sus seis hijos menores de edad, sobre los que tiene la patria potestad, y por no contar con otra vivienda adecuada para sí y para sus dichos hijos menores. Solicita, además, que se constituya el hogar seguro hasta que el menor de ellos alcance su mayoridad. El esposo divorciado por su parte solicita la venta en pública subasta de la propiedad para efectuar la división de los bienes.

El tribunal de instancia negó el derecho de hogar seguro a la esposa divorciada y ordenó la venta en pública subasta de la propiedad por un precio mínimo de $30,000.00 y la división por partes iguales entre los ex cónyuges del producto de la subasta.

Considerado el llamado a la equidad contenido en la Sec. 1853 citada precedentemente y las circunstancias especiales en que se encuentra la esposa divorciada con seis hijos menores de edad a su cargo, el juez de instancia debió haber reconocido el derecho de exención al hogar seguro de la esposa hasta la suma de $1,500 que fija la ley. La discreción que concede la ley al juzgador según la equidad del caso no le autoriza a aumentar el valor de la exención sobre la suma de $1,500 que dispone la ley. El tribunal tiene a su disposición otras medidas que puede tomar para garantizar la subsistencia y protección de la esposa divorciada y de los seis hijos menores de edad.

Según dispone la Ley, 31 L.P.R.A. sec. 1855, como la referida casa tiene un valor superior a $1,500, procede que al hacerse la venta se consigne del precio esta última cantidad a favor de la demandada-recurrente. El caso de autos es análogo al de *Vega Acosta* v. *Tribunal Superior*, 89 D.P.R. 408 (1963). Allí la propiedad sobre la cual se reclamaba el derecho de hogar seguro estaba valorada en $15,000. Este Tribunal le reconoció a la peticionaria el derecho de hogar seguro en la cantidad de $1,500 de cualquier venta que dispusiere el tribunal de instancia en el caso. Ese mismo derecho lo tiene la demandada-recurrente en el caso de autos. No es posible reconocerle el derecho de hogar seguro sobre la totalidad del inmueble, que excede la exención. Reconocer a la demandada-recurrente el derecho a permanecer en el inmueble hasta que cese el derecho de hogar seguro, equivale a extender el referido derecho hasta la cantidad de $30,000.00, valor de la propiedad. Tal actuación no está autorizada por el estatuto.

Los casos de *Carrillo* v. *Santiago*, 51 D.P.R. 545 (1937), e *Irizarry* v. *García*, 58 D.P.R. 280 (1941), son claramente

distinguibles. En el primero la propiedad objeto del litigio no excedía de la exención del hogar seguro. En el segundo, aunque no se menciona el valor de la propiedad, se resuelve por los fundamentos del caso de *Carrillo*. Véase 31 L.P.R.A. sec. 1851.

En vista de lo expuesto devolvería el caso al tribunal de instancia para la modificación de la sentencia dictada en el sentido de que del precio obtenido en la venta pública se consigne la suma de $1,500.00 en concepto de hogar seguro a favor de la demandada-recurrente, a tenor con la equidad que demandan los hechos del caso, y se divida el remanente entre las partes luego de pagarse las deudas y obligaciones existentes.