La Juez Asociada Señora Rodríguez Rodríguez
emitió la opinión del Tribunal.
La controversia medular que tenemos que atender en el presente caso gira en torno al alcance del derecho a hogar seguro; específicamente, si este derecho se puede reclamar sobre una propiedad privativa del padre de la menor para cuyo beneficio se ha solicitado.
I
La Sra. Madeline Muñiz Díaz y el Sr. Santos A. Candelario Vargas sostuvieron una relación consensual desde 1998 hasta el 2004, fruto de la cual nació una niña, la menor E.M.C.M., en el 2000. Durante su concubinato, las partes vivieron en una propiedad inmueble de dos niveles ubicada en Juana Díaz, Puerto Rico. Vigente la relación, el señor Candelario Vargas adquirió el referido inmueble mediante la compra de las particiones hereditarias de sus *535 hermanos. Concluida la relación entre las partes, la señora Muñiz Díaz y la menor se instalaron en el segundo nivel del inmueble. La primera planta está alquilada a un tercero por el canon de $450, según ños informa el peticionario.
Así las cosas, el 10 de febrero de 2004 el señor Candelario instó una demanda de desahucio contra la señora Muñiz. En la demanda alegó que ésta se negaba a desalojar el inmueble objeto de esta controversia. Explicó que la propiedad era un bien privativo, por lo que su ex compañera no tenía ningún derecho a permanecer allí. Por su parte, la señora Muñiz presentó su contestación a la demanda, en la que reclamó el uso de la propiedad como ho-gar seguro de la menor y, en reconvención, solicitó la división de la comunidad de bienes.
Luego de varios trámites procesales, las partes estipularon que la demandada desistía de la reconvención sobre la comunidad de bienes que existió entre ellos. A cambio, el demandante le entregaría la cantidad de trescientos dólares por cualquier derecho que pudiese tener la demandada en la referida comunidad. Además, la demandada reconoció que el bien en controversia era privativo del demandante.
Luego de celebrar la vista en sus méritos, el Tribunal de Primera Instancia dictó sentencia en la cual declaró “con lugar” la demanda de desahucio y “sin lugar” la reconvención. Explicó que al ser privativo el bien, la demandada no tenía ningún derecho a reclamar hogar seguro. Como parte de sus conclusiones de hecho, determinó que el demandante pagaba la hipoteca del inmueble y, además, pagaba una pensión alimenticia de trescientos cincuenta dólares a favor de su hija. Determinó, además, que no existía ningún contrato de arrendamiento entre las partes y que la demandada no pagaba ninguna mensualidad en concepto de renta. El tribunal concluyó que la señora Muñiz recibía un sueldo neto de mil setenta y ocho dólares, que pagaba dos préstamos y que estaba acogida al *536 capítulo trece de quiebra federal, por lo que pagaba doscientos cincuenta dórales mensuales.
Inconforme, la señora Muñiz acudió al Tribunal de Apelaciones para impugnar la determinación del Tribunal de Primera Instancia de no reconocer el derecho de hogar seguro sobre la propiedad privativa del padre de la menor.(1) Mediante una sentencia emitida el 24 de enero de 2006, el foro apelativo intermedio revocó al foro primario y declaró como hogar seguro de la menor la residencia objeto del presente litigio. Explicó que aunque el inmueble en controversia fuera un bien privativo del padre, no se afectaba el derecho a hogar seguro de la niña. Sostuvo que éste no es un título adicional al de propiedad, por lo que no se afectaba el derecho de propiedad del demandante sobre el inmueble. Añadió que el derecho a hogar seguro de los menores emana de la obligación que tienen los padres de alimentar a sus hijos, obligación revestida del más alto interés público.
Tras una moción de reconsideración y su correspondiente réplica, el Tribunal de Apelaciones emitió una sentencia enmendada en la que reiteró su determinación original. En desacuerdo con dicha determinación, el señor Candelario acudió ante este Tribunal mediante un recurso de certiorari en el que alegó, en lo pertinente, que había errado el foro apelativo al extender el derecho de hogar seguro a un bien de carácter privativo.
El 12 de mayo de 2006 expedimos el auto solicitado. Las partes han comparecido y contando con el beneficio de sus alegatos pasamos a resolver.
II
 La figura del hogar seguro pasó a formar parte de nuestro ordenamiento legal, poco después del cambio de *537 soberanía, mediante la aprobación de la Ley de 12 de marzo de 1903, conocida como la ley para definir el homestead (hogar seguro) y para exentarlo de una venta forzosa. Luego, dicha ley fue incorporada por la comisión codificadora al Código Civil como los Arts. 541-542 mediante una enmienda a la disposición final del Código Civil. Véase Ley Núm. 48 de 28 de abril de 1930. La ley de hogar seguro de 1903 proviene de la ley de hogar seguro de Illinois. L. Muñoz Morales, Apuntes sobre el derecho de homestead, IV (Núm. 3) Rev. Jur. U.P.R. 78, 88 (1935).
Posteriormente, la Ley Núm. 87 de 13 de mayo de 1936 (Ley Núm. 87 o Ley de Hogar Seguro) derogó la ley de 1903, aun cuando no hizo mención del Código Civil. La Ley Núm. 87 aparece codificada en el Código Civil, 31 L.P.R.A. secs. 1851-1857. Recientemente, las disposiciones sobre hogar seguro sufrieron enmiendas para aumentar la cuantía del hogar seguro. Ley Núm. 116 de 2 de mayo de 2003. Véase Rodríguez v. Pérez, 161 D.P.R. 637 (2004).
Este tipo de legislación se diseñó principalmente —tanto aquí como en Estados Unidos— para aislar el ho-gar familiar de los acreedores del deudor, así como para prohibir que su propietario lo enajenara sin el consentimiento de su cónyuge. G.L. Haskins, Homestead Exemptions, 63 (Núm. 8) Harv. L. Rev. 1288 (1950) (“[The] homestead laws, [were] designed to protect the family home from the reach of certain classes of creditors and to prevent alienation by the owner without the consent of his spouse”). Ello así aun en perjuicio de los reclamos válidos de un acreedor. Riggs v. Sterling, 27 N.W. 705, 708 (Mich. 1886). Véase, también, Morantz, There’s no Place Like Home: Homestead Exemption and Judicial Constructions of Family in Nineteenth Century America, 24 Law & Hist. Rev. 245 (2006). Sus orígenes se pueden rastrear a ciertos periodos de inestabilidad financiera durante el siglo XIX. Comentario, State Homestead Exemption Laws, 46 (Núm. 6) Yale L.J. 1023, 1031 (1937). Véase, también, Kleinert v. Lefkowitz, 259 N.W. 871, 872-873 (Mich. 1935). En tal sentido, el profesor Muñoz Morales nos indica que el homes *538 tead es “una institución de origen Norte-Americano nacida con el propósito de estimular la adquisición y conservación de propiedad y evitar el completo desamparo de la familia”. Muñoz Morales, supra, pág. 78.
Para algunos, el propósito principal de estos estatutos era proveer seguridad y estabilidad a la familia del deudor, evitando que el hogar familiar pudiera ser ejecutado en cobro de una deuda. Wuicich v. Solomon-Wickersham Co., 157 P. 972, 973 (Ariz. 1916) (“Homestead statutes are enacted as a matter of public policy and in the interest of humanity. One of the objects is that everything shall not be taken from the family, and it left in a state of penury and pauperism, and its members perhaps a public charge”). Mientras, para otros el propósito principal era proteger al hombre terrateniente del infortunio económico en que podía sucumbir. Así, la jurisprudencia de esta época es un reflejo de las actitudes de la sociedad del siglo XIX sobre la tenencia de la tierra, los roles del hombre y la mujer en la familia, y los problemas de la dependencia económica. Véase Morantz, supra.
Con ello de trasfondo, abordemos el tema que nos ocupa.
III
Como indicamos, se cuestiona en este caso el derecho de la demandada a reclamar para su hija como hogar seguro el inmueble propiedad de su compañero consensual, con quien convivió poco más de cinco años y quien es el padre de la menor. Este inmueble fue donde el grupo familiar tuvo instalada su residencia conjunta, permanente y habitual, por lo que constituía el centro de la vida en común. Es decir, era su vivienda familiar habitual hasta que finalizó la relación afectiva de la pareja.
Como sabemos, la Ley Núm. 87, según enmendada, provee a todo jefe de familia el derecho a poseer y disfrutar de una finca, que le pertenezca o posea legalmente, en concepto de hogar seguro. Dicha finca estará *539 exenta de venta por virtud de una sentencia o ejecución, a menos que se obtenga por ella una suma mayor de quince mil dólares. En caso de venta, la suma de quince mil dólares le corresponde al jefe de familia, una vez establezca su derecho a hogar seguro, y el exceso de dicha suma se pagará al acreedor. 31 L.P.R.A. sec. 1855.
La Sección 2 de la Ley de Hogar Seguro dispone, en lo pertinente, que el hogar seguro “y todo derecho o título sobre el mismo estará exento de embargo, sentencia, exacción o ejecución”. 31 L.P.R.A. sec. 1852. De otra parte, la sección siguiente establece que en caso de divorcio, “el tribunal que lo conceda deberá disponer del hogar seguro según la equidad del caso”. 31 L.P.R.A. sec. 1853.
Utilizando como norte el principio de equidad establecido en la Sección 3 antes transcrita, nuestras decisiones han adjudicado el derecho a hogar seguro sobre la vivienda conyugal al ex cónyuge que retenía la custodia de los hijos. Véanse: Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655 (1978); Vega Acosta v. Tribunal Superior, 89 D.P.R. 408 (1963); Carrillo v. Santiago, 51 D.P.R. 545 (1937). No hay duda que el hilo conductor en estas decisiones fue la protección a la familia y los menores, impartiéndole al derecho de hogar seguro una interpretación liberal y expansiva. García v. Pérez, 46 D.P.R. 31 (1934). De esta forma nuestra jurisprudencia avaló la corriente doctrinal que preciaba la familia como el bien tutelado en las leyes referentes al ho-gar seguro. En Federal Land Bank v. Corte Mpal., 47 D.P.R. 942, 945 (1935), indicamos sin ambages que “la base fundamental del [derecho a hogar seguro] es la protección de la familia ...”.
Lo cierto es que la vivienda familiar es un patrimonio que, prescindiendo de su titular, se encuentra al servicio de la familia como colectivo. En tal rigor, la vivienda familiar es “como una especie de propiedad familiar que trasciende a los propios cónyuges”. A. Juanes Peces y J.R. Galván Arias, La naturaleza jurídica de la atribución de la vivienda familiar en los casos de crisis matrimonial, *540 1994-3 Rev. Jur. Esp. La Ley 969, 970 (1994). En otras palabras, es un bien de goce colectivo, al servicio de la familia, independientemente del origen o titularidad del inmueble. De ahí que la figura de hogar seguro, al garantizar la adscripción del inmueble/residencia habitual al padre custodio, lo hace en función del beneficio que representa para la familia. Esto es consecuencia obligada del principio ampliamente recogido en nuestro Derecho positivo y en nuestra jurisprudencia de proteger los mejores intereses de los hijos.
Acorde con lo anterior, en Carrillo v. Santiago, supra, concluimos que en caso de divorcio, el padre que retiene la custodia de los hijos conserva la característica de jefe de familia, por lo que le cobija el derecho a hogar seguro contenido en la Ley de 12 de mayo de 1903. Resolvimos que, en esos casos, el jefe de familia retendrá el derecho a hogar seguro sobre la propiedad que constituya la vivienda familiar, sin perjuicio de que el otro ex cónyuge pueda reclamar la mitad de dicha propiedad cuando por cualquier causa cese el referido derecho. De esta forma salvaguardamos el bienestar de los menores sin afectar el interés propietario de los ex cónyuges. Véase, además, López Rudón v. López, 48 D.P.R. 324 (1935).
Por otro lado, en Cruz Cruz v. Irizarry Tirado, supra, págs. 660-661, señalamos la pauta a seguir al momento de adjudicar el hogar seguro, cuando indicamos:
La preservación del hogar seguro familiar para beneficio del grupo formado por madre e hijos tiene primacía sobre el derecho de propiedad del cónyuge en los activos de la disuelta sociedad conyugal. Su reclamación de gananciales en la vivienda que aloja a esta familia quedará paralizada por el tiempo que subsistan las circunstancias que le dan calidad de hogar seguro y mientras la recta razón de equidad ampare el derecho de sus ocupantes. Hemos reconocido que el derecho de dominio no es atribución absoluta de su titular y que está supeditado a intereses sociales de orden superior, significativamente la protección de la vivienda.
Añadimos que el límite monetario señalado en la legis *541 lación sobre hogar seguro no restringe el valor del hogar que en caso de divorcio se conceda a uno de los cónyuges, pues constituye una autorización del tribunal para el uso del inmueble en satisfacción de una legítima necesidad de la familia.
Como es de ver, nuestra jurisprudencia sobre este tema revela una tendencia marcada a proteger la vivienda familiar, evitando su desmembramiento y conservando su uso, atribuyéndosela a la parte que tenga la custodia de los hijos como medida de carácter proteccionista. Se desprende de nuestras expresiones que el bienestar de los hijos es un interés de mayor jerarquía que cualquier interés propietario que puedan tener los padres. Hemos reconocido también que como el derecho a hogar seguro se configura como una limitación al ejercicio del derecho que pueda tener uno de los padres sobre la vivienda familiar, cuando las circunstancias que motivaron la atribución original cesan, la atribución del uso puede cesar. Cruz Cruz v. Irizarry Tirado, supra. Véase M.D. Cervilla Garzón, La atribución del uso de la vivienda familiar al cónyuge no titular, Madrid, Ed. Marcial Pons, 2005.(2)
*542 En 1997, la Asamblea Legislativa recogió en legislación la norma que establecimos en Cruz Cruz v. Irizarry Tirado, supra, así como los principios antes enunciados. Véase Ley Núm. 184 de 22 de diciembre de 1997. Dicha ley enmendó el Código Civil para añadir el Artículo 109-A, 31 L.P.R.A. sec. 385a, el cual dispone lo siguiente:
El cónyuge a quien por razón del divorcio se le concede la custodia de los hijos del matrimonio, que sean menores de edad, que estén incapacitados mental o físicamente sean estos mayores o menores de edad o que sean dependientes por razón de estudios, hasta [los] veinticinco (25) años de edad, tendrá derecho a reclamar como hogar seguro la vivienda que constituyó el hogar del matrimonio y que pertenece a la sociedad de gananciales, mientras dure la minoría de edad, la preparación académica o la incapacidad de los hijos que quedaron bajo su custodia por razón de divorcio.
La propiedad ganancial que constituye el hogar seguro no estará sujeta a división mientras dure cualesquiera de las condiciones en virtud de las cuales se concedió. Disponiéndose, que el derecho de hogar seguro podrá reclamarse desde que se necesitare, pudiendo ser reclamado en la demanda de divorcio, durante el proceso, o luego de decretarse el mismo. Una vez reclamado, el juzgador determinará lo que en justicia procede de acuerdo con las circunstancias particulares de cada situación.
El cónyuge que reclama el derecho a hogar seguro podrá retener todos aquellos bienes de uso ordinario en la vivienda.
Cuando se reclame el derecho de hogar seguro luego de decretado el divorcio, el mismo podrá ser concedido por el tribunal que conoció del divorcio. (Enfasis nuestro.)
El propósito principal de esta legislación, según se desprende de su historial legislativo, fue, precisamente, “hace[rle] justicia a la institución de la familia”. Exposición de Motivos de la Ley Núm. 184 de 26 de diciembre de 1997, (Parte 2) Leyes de Puerto Rico 918. Véase, además, Rodríguez v. Pérez, supra. Se trata de salvaguardar el bienestar de los hijos cuando por la separación de sus padres se encuentran en una situación de inestabilidad respecto a su vivienda. Véanse: XLVIII (Núm. 25) Diario de Sesiones (Senado), 6 de noviembre de 1997, pág. 6854; Comunicación de la Oficina de Asuntos de la Juventud, Oficina del Gobernador, sobre el P. del S. 194,14 de marzo de 1997. No *543 hay por qué disgregar a los hijos del entorno que han conocido desde siempre. El interés propietario del padre tiene que tomar un segundo plano frente a lo que es el mejor bienestar de sus hijos. De ahí que el artículo aprobado no incluya límites de valor monetario al derecho de hogar seguro.
En Rodríguez v. Pérez, supra, nos enfrentamos a una controversia donde se cuestionaba si el hecho de que el Artículo 109-A del Código Civil, supra, hablara de la “propiedad ganancial que constituye el hogar seguro”, impedía que se reclamase como tal una propiedad que pertenecía en comunidad de bienes a los padres de la menor, habida cuenta que habían adquirido dicha propiedad antes de contraer matrimonio. Contestamos la interrogante en la negativa. Indicamos que independientemente del texto del Artículo 109-A, existía en nuestro ordenamiento amplia jurisprudencia bajo la Ley de Hogar Seguro y su mandato de equidad que no podíamos soslayar, y cuya vitalidad permanecía incólume, independientemente de la aprobación del Artículo 109-A. Indicamos, entonces, que
[n]o hay duda que las razones en equidad y de política pública que este Tribunal ha desarrollado sobre el tema del hogar seguro continúan vigentes y pueden, por lo tanto, aplicarse al caso de autos. Rodríguez v. Pérez, supra, pág. 654.
Tomando en cuenta la equidad y la política pública que procura el beneficio del menor, el favor filii, concluimos que el derecho a hogar seguro se extiende a la vivienda familiar aun cuando la misma no constituya un bien de carácter ganancial, sino un bien común entre ex cónyuges.(3) En atención a la primacía de estos valores, nos negamos a aplicar mecánicamente el lenguaje expreso del Art. 109-A. Adviértase que el propio texto del Art. 109-A del Código Civil, supra, luego de establecer cómo se dis-pone del hogar seguro, le ordena al juzgador que *544 “determin[e] lo que en justicia procedía] de acuerdo con las circunstancias particulares de cada situación”. 31 L.P.R.A. sec. 385a. Con este enunciado, el legislador autorizó al juzgador a atemperar el rigor de lo estatuido cuando la justicia así lo requiera. Rodríguez v. Pérez, supra.
Hoy nos corresponde continuar nuestra construcción dogmática sobre esta materia. Debemos atender en esta ocasión la controversia de si el derecho a hogar seguro se extiende también a la vivienda familiar habitual cuando ésta constituye un bien privativo del padre no custodio. Conforme nuestra trayectoria doctrinal y el claro mandato del propio Artículo 109-A de procurar siempre la solución justa, la respuesta a la interrogante planteada tiene que ser en la afirmativa. Son varias las razones que nos llevan a concluir así. Comenzamos señalando que al plantearnos esta controversia lo hacemos conscientes de “que los estatutos referentes a hogar seguro deben ser interpretados con toda la posible liberalidad para darle efecto al propósito de la ley ...”. García v. Pérez, supra, pág. 41.
Como primer criterio decisorio, opinamos que las mismas consideraciones de equidad y política pública que han permeado por décadas nuestra jurisprudencia sobre el derecho a reclamar el hogar seguro aplican con igual rigor en este caso. Estas consideraciones las resumimos en Rodríguez v. Pérez, supra, pág. 660, de la manera siguiente:
... [N]o existe argumento jurídico válido alguno que nos persuada a no reconocer el derecho a hogar seguro en el caso ante nuestra consideración. Al contrario, la equidad que gobierna el presente caso haya amplia base en nuestro ordenamiento para reconocer la propiedad aquí en controversia como hogar seguro de esta jefe de familia. El hecho de que ... el reconocimiento del hogar seguro no afecta la titularidad; que la propiedad se utilizó como el hogar conyugal; que es la única propiedad que la menor ha conocido, y que el derecho a dominio está supeditado a los intereses sociales de proteger a los menores, a la familia y al hogar donde éstos residen.
Tomamos en consideración, también, que en este caso la vivienda reclamada como hogar seguro había sido la vi *545 vienda familiar de las partes por un periodo de tiempo considerable.
Adviértase, además, que estamos frente a un derecho estrictamente de naturaleza familiar con lo cual, al atribuir la vivienda familiar al padre custodio no titular del inmueble en beneficio de su hija, buscamos “el mantenimiento de las mismas condiciones familiares existentes antes de la ruptura ... [lo que] constituye una forma de contribución a las cargas generadas con la separación o el divorcio que hay que afrontar ...”. E. Roca Trías, De los efectos comunes a la nulidad, separación y divorcio, en Comentarios a las reformas del derecho de familia, Madrid, Ed. Tecnos, 1984, Vol. I, págs. 606-608. El derecho a hogar seguro tiene, por lo tanto, una íntima conexión con el derecho de alimento de los padres a los hijos. Cervilla Garzón, op. cit., pág. 163. Pues, como sabemos, corresponde a los padres el deber de alimentar a los hijos y entre los alimentos debe comprenderse la habitación. 31 L.P.R.A. sec. 561. La profesora Roca Trías señala certeramente lo siguiente:
Por lo tanto creo que es lo mismo contribuir al pago de los gastos que ocasione el alquiler o compra de una nueva vivienda que atribuir a los hijos y al cónyuge a cuyo cuidado queden el uso de la vivienda conyugal. Roca Trías, op. cit, pág. 608. Véanse: Artículos 143 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 562 y 601.
Es procedente reconocer que la concesión de la vivienda familiar a los hijos menores enraíza con la obligación de alimentos del padre para con sus hijos. Esta obligación tiene como “fundamento medular ... la relación paterno-filial”, es decir, garantizar las necesidades básicas de la vida de quien no puede cubrirlas por sí mismo. Argüello v. Argüello, 155 D.P.R. 62, 70 (2001). Como bien expresáramos en Cruz Cruz v. Irizarry Tirado, supra, págs. 661-662, al reconocer el derecho a hogar seguro frente a una reclamación de división de bienes gananciales, “queda vindicada la fundamental obligación legal y moral del padre ...de proveer albergue a su familia inmediata”. No hay *546 duda, entonces, tal y como señala la profesora Roca Trías, que con la atribución de la vivienda familiar al padre custodio no titular del inmueble, lo que hacemos es reconocer una forma de contribución a la obligación de satisfacer alimentos que como resultado de la separación de la pareja le corresponde al padre alimentista.
Recordemos también lo que ya hemos resuelto, que
... [E]l deber de alimentar, educar y criar a los hijos menores es como resultado de ser padre o madre, y existe con todos los efectos patrimoniales, jurídicos y morales desde el momento en que nace el hijo, irrespectivamente de las circunstancias de su nacimiento. Chévere v. Levis, 150 D.P.R. 525, 539 (2000).
Por lo tanto, el hecho de que haya o no existido un matrimonio entre los padres de la menor es irrelevante al momento de determinar el alcance de la obligación que tendrá el padre alimentista de alimentar a su prole y el derecho del padre no custodio de reclamar a favor de su hija la vivienda familiar como hogar seguro.
En conclusión, el derecho a hogar seguro reconocido en el Artículo 109-A del Código Civil de Puerto Rico no depende del interés propietario que pueda tener sobre el bien el jefe de familia, pues ese es un mecanismo para proteger a la unidad familiar y lo que ha sido el centro de la vida en común.(4) Además, ¿cómo mejor aplicar el mandato de justicia provisto en el artículo, que evitando que la menor sea desarraigada de su entorno y del único hogar que ha conocido en su corta vida?
Adviértase, además, que en este caso las partes poseyeron en forma compartida la vivienda familiar por varios años y ahora se pasa a una posesión exclusiva sobre *547 la ésta. Esto sucede, evidentemente, porque las necesidades familiares ameritan una protección prioritaria frente a las titularidades protegidas por el derecho de propiedad. Es importante reiterar aquí que “al adjudicar controversias relacionadas con menores, los tribunales deben guiarse por el principio de asegurar el bienestar y los mejores intereses de éstos. [L]os derechos de los padres pueden limitarse en aras de proteger un interés apremiante del Estado, como lo es bienestar de los menores”. Rexach v. Ramírez, 162 D.P.R. 130, 147-148 (2004). Véanse: Ferrer v. González, 161 D.P.R. 172 (2004); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 71-72 (1987). Una vez atribuida la vivienda familiar al padre custodio en favor de los hijos en común, la atribución se convierte en una forma de contribuir a las cargas de manutención de esos menores y como tal se debe tratar.
Pasemos entonces a aplicar lo aquí discutido a los hechos particulares traídos ante nuestra atención.
IV
En el caso de autos, la señora Muñoz reclamó a favor de su hija menor el derecho de ésta a valerse de lo que ha sido la residencia habitual familiar por varios años como hogar seguro, aun cuando esta propiedad constituya un bien privativo de su padre. Por los fundamentos discutidos anteriormente, concluimos que le asiste la razón.
Como indicamos y recalcamos otra vez, el deber que tienen los padres de alimentar a sus hijos incluye el deber de proveerles para su habitación, por lo que el hogar seguro se configura precisamente como una forma de contribución a esa carga. El interés propietario que puedan tener los padres sobre la vivienda familiar habitual que se reclama como hogar seguro no es un factor determinante al momento de decidir si procede o no una petición de hogar seguro. Como tampoco es relevante el hecho de que haya o no existido un matrimonio entre los padres de la menor para determinar si a la menor le cobija este derecho, pues *548 como ya hemos señalado, la obligación de alimentar a los hijos no está supeditada a la preexistencia de una relación matrimonial. La finalidad de la norma que anunciamos es atender las necesidades prioritarias del menor como lo es la habitación, así como la necesidad sentimental de continuar ocupando la vivienda familiar, lo que conlleva continuar residiendo en lo que ha sido el entorno social y afectivo de la menor (colegio, amigos, vecinos).
Sin embargo, el reconocimiento del derecho a ho-gar seguro no es automático; se basa en los preceptos de equidad vislumbrados según las circunstancias de cada caso y debe satisfacer una necesidad legítima. Cruz Cruz v. Irizarry Tirado, supra, pág. 661. Hemos indicado con atino que el derecho a hogar seguro “no afecta la titularidad ni es un título adicional de propiedad”, ya que lo que cambia es el uso de la propiedad y no su título. Rodríguez v. Pérez, supra, pág. 655. Véase Vega Acosta v. Tribunal Superior, supra, pág. 412.
Lo cierto es que el padre titular sufre, en efecto, una limitación de derecho temporal cuyo propósito es, por supuesto, proteger la continuidad de la convivencia familiar en beneficio de sus hijos. Ahora bien, ese uso de la vivienda tiene, evidentemente, un valor susceptible de cuantificación económica y viene a integrar, en cierto modo, una prestación in natura, lo que a nuestro juicio exige que sea tenida en cuenta para calcular el importe de las cargas que pesan sobre el padre alimentista.(5)
En vista de lo anterior, se modifica la sentencia dictada por el Tribunal de Apelaciones y se devuelve el caso al foro primario para que evalúe, según lo aquí resuelto, si se debe modificar la pensión que en concepto de alimentos se le fijó al padre no custodio, en atención a que según los hechos de este caso, procede la atribución de la vivienda familiar a la *549 menor representada por la madre custodia. Así modificada se confirma la determinación del foro apelativo intermedio.

Se dictará sentencia de conformidad.

 Alegó, además, que erró el Tribunal de Primera Instancia al celebrar la vista en su fondo a pesar que la demandada no tuvo la oportunidad de cotejar la deposición que le fuese tomada, como lo dispone la Regla 27.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

 Cuando la doctrina española analiza el contenido y alcance de los Arts. 96 y 1320 del Código Civil español, discute ampliamente sobre la naturaleza jurídica del derecho que se le reconoce a quien se le atribuye la vivienda familiar. Un breve repaso de esa discusión doctrinal evidencia la falta de unanimidad de criterio sobre el particular. Rams Albesa sugiere que en estos supuestos se configura un derecho real de uso. J. Rams Albesa y R. Moreno Flórez, Comentarios al Código Civil, Barcelona, Ed. Bosch, T. II, Vol. 1, 2000, págs. 1015-1016. Roca Trías habla de la posesión compartida que pasa a ser exclusiva, sin que exista creación ninguna de derecho real o de crédito. E. Roca Trías, en la obra colectiva Comentarios a la reforma del derecho de familia, Madrid, Ed. Tecnos, 1984, Vol. I, págs. 606-608. O’Callaghan sugiere que el beneficiado con la atribución se le constituye un derecho de ocupación con un poder inmediato y absoluto sobre la cosa. X. O’Callaghan Muñoz, El derecho de ocupación de la vivienda familiar en las crisis matrimoniales, AC, Núm. 19/86, pág. 1329. Méndez Pérez considera que lo que se constituye es un derecho real de habitación. J. Méndez Pérez, La atribución judicial de la vivienda a uno de los cónyuges en los procesos de nulidad, separación o divorcio, 1987 Rev. Gen. Der. 6287. Para García Mouriño y Del Carpió Fiestas, este derecho es de naturaleza exclusivamente personal. García y Del Carpió Fiestas, Atribución del uso de vivienda familiar y actio communi dividundo, AC 19941, 75 y ss. O, como reconoce sabiamente la profesora Cervilla Garzón, en La atribución del uso de la vivienda familiar al cónyuge no titular, Madrid, Ed. Marcial Pons, 2005, pág. 42, dada la naturaleza híbrida o sui generis, “participan de rasgos pertenecientes a uno y otro tipo, lo que le impiden ser definidos de una forma con exclusión de la otra”.

 En Irizarry v. García, 58 D.P.R. 280 (1941), resolvimos que el padre custodio de los hijos podía reclamar del derecho a hogar seguro, aun cuando la propiedad estuviera a nombre de los hijos.

 Por contra, en Quiñones v. Reyes, 72 D.P.R. 304, 308 (1951), resolvimos que cuando la propiedad constituye un bien privativo de uno de los ex cónyuges, el otro, aunque retenga la custodia de los hijos, no tiene derecho a reclamar hogar seguro. Esta limitada interpretación del derecho a hogar seguro es incompatible con lo que aquí resolvemos, con lo cual lo allí dispuesto ha perdido eficacia y queda revocado por la decisión que hoy anunciamos.

 Véase M.D. Cervilla Garzón, La atribución del uso de la vivienda familiar al cónyuge no titular, Madrid, Marcial Pons, 2005, págs. 161-170.