Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oscar Crespo Quiñones<br><br>    Recurrido<br><br>       v.<br><br>Arlene Santiago Velázquez<br><br>    Peticionaria | Certiorari<br><br>2009 TSPR 125<br><br>176 DPR \_\_\_\_ |

Número del Caso: CC-2007-1114

Fecha: 31 de julio de 2009

Tribunal de Apelaciones:

       Región Judicial de San Juan

Juez Ponente:

       Hon. Dolores Rodríguez de Oronoz

Abogada de la Parte Peticionaria:

       Lcda. Rosa I. Ward Cid

Abogadas de la Parte Recurrida:

       Lcda. Zoila Espinoza Vaquer
       Lcda. Pilar Pérez Rojas

Materia: Deshaucio

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del pr oceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio p úblico a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oscar Crespo Quiñones

     Recurrido

       v.                         CC-2007-1114

Arlene Santiago Velázquez

     Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 31 de julio de 2009.

En esta ocasión reiteramos cómo se atenderán en este Tribunal los recursos en los cuales se revoca la decisión del Tribunal de Apelaciones de declararse sin jurisdicción para entender en los méritos del caso. Cuando determinemos que el Tribunal de Apelaciones sí tenía jurisdicción para atender el recurso, lo procedente es devolverlo a ese foro intermedio para que resuelva los méritos de la controversia entre las partes. Si está pendiente allí un recurso relacionado entre las mismas partes, es preferible como regla general que ambos se resuelvan de manera consolidada. Sostenemos así el esquema legislativo

que establece al Tribunal de Apelaciones como el foro que dispensa justicia apelativa en primer término.

Discutimos además, lo que debe hacerse cuando están pendientes ante el Tribunal de Apelaciones o ante el Tribunal de Primera Instancia casos simultáneos donde se reclama hogar seguro sobre un inmueble, por un lado, y por el otro se solicita que se desahucie del mismo inmueble a la parte que solicitó el reconocimiento de su derecho a hogar seguro.

I

La Sra. Arlene E. Santiago Velázquez y el Dr. Oscar Crespo Quiñones se divorciaron por la causal de abandono. Luego de decretarse el divorcio, las partes comenzaron a dilucidar los asuntos relativos a las pensiones alimentarias, la división de las capitulaciones matrimoniales y las alternativas de vivienda tanto para el doctor Crespo Quiñones como para la señora Santiago Velázquez y sus hijas. Estas últimas viven en un inmueble que es propiedad privativa del doctor Crespo Quiñones. Las partes no llegaron a un acuerdo sobre el lugar de vivienda.

Mientras se dilucidaban estos asuntos ante la sala de familia, el doctor Crespo Quiñones presentó una acción de desahucio sumario contra la señora Santiago Velázquez, en la que reclamó el referido inmueble. Ante esta situación, la señora Santiago Velázquez alegó que no procedía el desahucio sumario, porque tenía el derecho a reclamar dicho bien como hogar seguro.

El Tribunal de Primera Instancia, Sala de San Juan, declaró con lugar el desahucio. La señora Santiago Velázquez presentó un recurso de apelación ante el Tribunal de Apelaciones para revisar esa determinación, pero no prestó la fianza en apelación que se requiere en los casos de desahucio. Dicho foro entendió que la señora Santiago Velázquez no estaba exenta de prestar la referida fianza, por lo que desestimó el recurso por falta de jurisdicción. Ante esta situación, la señora Santiago Velázquez presentó entonces el recurso de *certiorari* que nos ocupa. En éste, la única controversia que las partes presentaron para nuestra consideración es la determinación del foro apelativo de desestimar el recurso por falta de jurisdicción.

Luego de que emitiéramos una orden de mostrar causa en este recurso, se emitió una resolución en la sala de familia para adjudicar como hogar seguro un bien distinto al inmueble objeto del desahucio. Dicha determinación fue recurrida por la señora Santiago Velázquez. El Tribunal de Apelaciones acogió ese recurso (KLCE200900153) y mediante resolución de 11 de febrero de 2009 que obra en autos, paralizó los procedimientos sobre la adjudicación del hogar seguro ante el foro de instancia.

II

A base del trasfondo procesal que ha precedido el recurso ante nuestra consideración, es evidente que la única controversia que nos corresponde resolver es si el Tribunal de Apelaciones tiene jurisdicción para ejercer su facultad

revisora. Conviene resaltar al respecto que nuestra sociedad goza de un sistema judicial unificado, integrado en un Tribunal General de Justicia. Véanse, Const. P.R., Art. V, Secs. 1 y 2, 1 L.P.R.A.; Artículo 2.001 de la Ley de la Judicatura de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24b. Conforme dispone la referida ley, el Tribunal General de Justicia está compuesto por un (1) foro de instancia y dos (2) foros revisores, a saber: el Tribunal de Apelaciones y el Tribunal Supremo. Ibíd. Esta estructura propende al funcionamiento ordenado de nuestro sistema judicial, en el que cada tribunal tiene una función que realizar en el curso de los asuntos litigiosos ante su consideración.

A tales efectos, nuestro ordenamiento establece que las acciones civiles o penales se presentan, en la etapa inicial, ante el Tribunal de Primera Instancia, excepto aquellos recursos en los que el Tribunal de Apelaciones y el Tribunal Supremo tienen jurisdicción original. Artículo 3.002 de la Ley de la Judicatura de 2003, id. sec. 24s(a). Véase, además, Hiram A. Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, Lexis-Nexis de Puerto Rico, Inc., 2001, pág. 34-35. Una vez el Tribunal de Primera Instancia emite su sentencia, el litigante puede apelar al Tribunal de Apelaciones. Id. sec. 24s(b). Véase también la Regla 53.1(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R.53.1(b). Si el litigante no está de acuerdo con el dictamen revisor que emita el Tribunal de Apelaciones, puede recurrir por

*certiorari* al Tribunal Supremo para que revise dicho dictamen. Ley de la Judicatura de 2003, <u>supra</u> sec. 24s(d).

Conforme con lo anterior, si el foro apelativo intermedio desestima el recurso presentado ante su consideración por falta de jurisdicción –es decir, sin dirimir los méritos de la sentencia del Tribunal de Primera Instancia– entonces, la parte afectada puede recurrir al Tribunal Supremo para que revisemos dicha determinación desestimatoria. Si el Tribunal Supremo entiende que el foro apelativo tiene jurisdicción, lo que procede es devolver el caso al Tribunal de Apelaciones para que ejerza su facultad revisora. De este modo se cumple con el mandato legislativo de que los dictámenes del Tribunal de Primera Instancia se revisen, en primer lugar, por el Tribunal de Apelaciones. Véase, Artículo 4.006 de la Ley de la Judicatura de 2003, <u>supra</u> sec. 24y.

### III

De acuerdo con lo que dispone el Código de Enjuiciamiento Civil, en los casos de desahucio el demandado tiene que prestar una fianza como requisito para presentar un recurso de apelación de la sentencia dictada en su contra. Art. 630 del Código de Enjuiciamiento Civil, reenumerado por la Ley Núm. 129 del 27 de septiembre de 2007, 32 L.P.R.A. sec. 2832. El requisito que obliga a un demandado a prestar fianza en apelación es jurisdiccional en todo tipo de pleito de desahucio, aun si no se fundare en falta de pago. <u>Blanes v. Valdejulli</u>, 73 D.P.R. 2, 5 (1952). La razón es obvia: la

fianza no existe para garantizar únicamente los pagos adeudados sino también los daños resultantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación. "Lo anterior aconseja que sea el Tribunal de Primera Instancia el foro que fije la fianza, como paso previo y jurisdiccional a la radicación del recurso de apelación". Exposición de Motivos de la Ley Núm. 378 de 3 de septiembre de 2000, que enmendó el Art. 630, supra. Nada de esto cambió con la aprobación de la Ley de la Judicatura de 2003, supra, ni con la Ley Núm. 129, supra.

Esta fianza se tiene que otorgar dentro del término de treinta días para apelar que se establece en el Artículo 629 del Código de Enjuiciamiento Civil, supra sec. 2831, reenumerado por la Ley Núm. 129, supra. Véase, Andino v. Fajardo Sugar Co., 82 D.P.R. 85 (1961). En la alternativa, cuando el desahucio sea por falta de pago, la parte apelante puede consignar en el tribunal el monto de la deuda hasta la fecha de la sentencia, en lugar de prestar fianza. Art. 630, supra. Véanse, además, Blanes v. Valdejulli, supra; Casillas v. Corte, 38 D.P.R. 731 (1928).

Conforme dispone la doctrina, éste es un requisito jurisdiccional. González v. López, 69 D.P.R. 944, 946-947 (1949); López v. Pérez, 68 D.P.R. 312 (1948). Por tanto, si el demandado no presta la referida fianza, ni consigna los cánones adeudados cuando el desahucio se funde en la falta de pago, el Tribunal de Apelaciones no adquiere jurisdicción para atender el recurso de apelación.

No obstante lo anterior, aquellos demandados cuya insolvencia económica ha sido reconocida por el tribunal están exentos de cumplir con dicho requisito. Bucaré Management v. Arriaga García, 125 D.P.R. 153, 158 (1990); Molina v. C.R.U.V., 114 D.P.R. 295, 297-298 (1983). Esta norma es cónsona con la intención del legislador de garantizar el acceso a los tribunales de los litigantes insolventes. Bucaré Management v. Arriaga García, supra a la pág. 157.

Según se desprende del expediente ante nuestra consideración, la parte demandada-peticionaria, la señora Santiago Velázquez, se encuentra en un estado de insolvencia que le impide poder cumplir con el requisito de afianzamiento para presentar el recurso de apelación ante el Tribunal de Apelaciones. La señora Santiago Velázquez es ama de casa y no genera ingresos. Luego del divorcio, las partes no se han puesto de acuerdo respecto a la división de los bienes matrimoniales y el demandante-recurrido, el doctor Crespo Quiñones, aceptó en una carta dirigida a la señora Santiago Velázquez que le retiene las mensualidades pactadas en las capitulaciones matrimoniales. Carta de 26 de marzo de 2007, Ap. Cert. pág. 150. En las circunstancias económicas en las que se encuentra la señora Santiago Velázquez, el Tribunal de Apelaciones debió eximirla del requisito de la fianza en apelación y asumir su jurisdicción para atender el recurso. Por tanto, dicho foro erró al desestimar el recurso de apelación.

IV

Una vez resuelto que el Tribunal de Apelaciones tenía jurisdicción para atender la apelación, procede devolver el recurso a dicho foro para que lo atienda junto a la revisión por *certiorari* de la determinación de hogar seguro que hizo el Tribunal de Primera Instancia. "Un principio cardinal en nuestro derecho procesal es el de evitar la multiplicidad de pleitos, y de adjudicar en una causa las distintas reclamaciones de las partes cuando la naturaleza de las causas lo permiten". López Valdés v. Tribunal Superior, 96 D.P.R. 779, 792 (1968). "[N]o es necesario que la totalidad de las cuestiones de hecho y de derecho sean idénticas". Vives Vázquez v. E.L.A., 142 D.P.R. 117, 127 (1996). Tampoco es un requisito indispensable que las acciones a consolidarse sean de igual naturaleza. Id. a la pág. 128.

Por ello es conveniente y deseable que se consolide este recurso con el *certiorari* para revisar el dictamen de hogar seguro que está pendiente ante el Tribunal de Apelaciones. Ambos recursos inciden sobre el mismo objeto y las partes litigantes son las mismas. Por lo tanto, se cumplen los dos requisitos que exige la Regla 38.1 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R. 38.1, para que proceda la consolidación: "que los casos presenten cuestiones comunes de hechos o de derecho, y que éstos estén pendientes ante el tribunal". Vives Vázquez v. E.L.A., supra a la pág. 126. Véase, además, Hosp. San Fco., Inc. v. Sria. de Salud, 144 D.P.R. 586 (1997). Con la consolidación de ambos recursos se consigue

"evitar la proliferación de acciones, lograr la economía procesal y evitar la indeseable probabilidad de que surjan fallos incompatibles relacionados con un mismo incidente". Granados v. Rodríguez Estrada II, 124 D.P.R. 593, 608 (1989).

En nuestro ordenamiento, el derecho de dominio que goza el titular está supeditado a intereses de mayor jerarquía. Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655 (1978). Conforme con este principio, la doctrina establece que el derecho de dominio del padre o cualquier interés propietario que pueda tener sobre la vivienda familiar cede ante el bienestar de los hijos. Candelario Vargas v. Muñiz Díaz, 2007 T.S.P.R. 117, 2007 J.T.S. 123, 171 D.P.R. ___ (2007).

A tenor con esta norma, lo recomendable en términos procesales es que cuando se presenten situaciones como la de autos en la que una parte reclama el bien objeto del desahucio sumario como hogar seguro, el Tribunal de Primera Instancia deberá paralizar la consideración del caso de desahucio hasta que se dilucide en la sala de familia si la propiedad sobre la que se verificaría el desahucio será o no el hogar seguro de la familia. De no declararse hogar seguro, se reanudará la consideración del caso de desahucio. De declararse la propiedad como hogar seguro, la acción de desahucio se tornará académica y procederá la desestimación de la demanda. Corresponde a la parte interesada en el pleito de desahucio informarle al tribunal el estado de los procedimientos habidos en la sala de familia con relación a la reclamación de hogar seguro.

De esta forma, ambos reclamos se atenderán a la luz de los mejores intereses de los hijos menores de las partes y con la prontitud que ameritan los intereses presentes en este recurso, a saber: el derecho propietario y el derecho a hogar seguro. Además, la paralización del caso de desahucio mientras se resuelve la reclamación de hogar seguro evita que se tramiten a la vez dos recursos separados en el Tribunal de Apelaciones, como ocurrió aquí. Se reduce, además, la probabilidad de que surjan dictámenes inconsistentes entre sí. En esta situación particular, es imposible atender la acción de desahucio de manera sumaria. Tampoco es práctico enviar ese asunto a una sala especializada en otros asuntos, como lo es la sala de asuntos de familia y menores. Es preferible que los casos de desahucio los atiendan los jueces que están familiarizados con tales acciones.

Como el Tribunal de Primera Instancia siguió un curso procesal distinto, procede consolidar los casos en la etapa en que se encuentran, ante el Tribunal de Apelaciones, para que éste los atienda de forma consolidada, no se incurra en procedimientos innecesarios y se eviten dictámenes inconsistentes.

V

Como señalamos anteriormente, el único asunto que la señora Santiago Velázquez presentó en este recurso se limita a revisar la determinación del foro apelativo en la que se desestimó el recurso de apelación por falta de jurisdicción. Según surge del expediente, los escritos de las partes se

circunscriben a discutir únicamente el asunto jurisdiccional. De hecho, como ya señalamos, lo único que este Tribunal tiene que determinar en esta etapa es si procedía la desestimación del recurso. Por lo tanto, resuelto que el foro apelativo tenía jurisdicción para atender el asunto ante sí, lo correcto en derecho es devolverle el caso para que lo resuelva en los méritos junto con la revisión de la determinación de hogar seguro que está allí pendiente.

El Tribunal de Apelaciones también revisa cuestiones de estricto derecho y ese es el foro que atiende dichas revisiones en primer orden. De hecho, en innumerables ocasiones, cuando este Tribunal ha determinado que el Tribunal de Apelaciones tiene jurisdicción, hemos devuelto el caso a ese foro apelativo para que ejerza su facultad revisora. Véanse, entre otros, Ramos Ramos v. Westernbank, 2007 T.S.P.R. 122, 2007 J.T.S. 128, 171 D.P.R. __ (2007) (Sentencia publicada); Fraya v. A.C.T., 162 D.P.R. 182 (2004); Pellot v. Avon, 160 D.P.R. 125 (2003); Román et als. v. Román et als., 158 D.P.R. 163 (2002); Martínez v. Depto. del Trabajo, 145 D.P.R. 588 (1988).

Precisamente, en Bucaré Management v. Arriaga, supra, este Tribunal atendió una controversia como la de autos en la que la parte demandada era insolvente, por lo que no tenía que prestar fianza para presentar un recurso de apelación contra una sentencia que declaró con lugar un desahucio. En dicho caso devolvimos el asunto al foro revisor, el entonces Tribunal Superior, para que atendiera los méritos del caso.

La consistencia implica decidir situaciones similares de la misma manera. Por eso, debemos aclarar que nuestra decisión de hoy es totalmente consistente con lo resuelto en Suárez Cáceres v. Com. Estatal Elecciones, Op. de 9 de junio de 2009, 2009 T.S.P.R. 97, 2009 J.T.S. 100, 176 D.P.R. ___ (2009). Allí teníamos ante nos toda la controversia y la resolvimos luego que las partes la argumentaran. En cambio, en el recurso que ahora nos ocupa, el caso de hogar seguro no está ante nos y las partes no han argumentado los méritos de ninguna de las dos acciones, la de desahucio ni la de hogar seguro. De hecho, la parte peticionaria, la señora Santiago Velázquez, se limita a alegar que está exenta del pago de fianza en la acción de desahucio, bajo varias teorías de derecho, incluyendo la indigencia. Menciona, pero no elabora, por qué no procede la demanda de desahucio. Bajo estas circunstancias, es claro que la Ley de la Judicatura confiere competencia al Tribunal de Apelaciones para que provea justicia apelativa en primer término. Por eso le devolvemos el caso, tal como lo hemos ordenado en los casos citados arriba.

Claro está, si alguna de las partes queda inconforme con el dictamen que en su día emita el Tribunal de Apelaciones, puede recurrir ante nos para que lo revisemos. Con este curso de acción se resuelven simultáneamente los dos asuntos que aquejan a las partes en este caso: el desahucio y el hogar seguro. Cabe señalar que al así actuar no se afectan los intereses de las menores, ya que el Tribunal de Apelaciones

paralizó los procedimientos de adjudicación de hogar seguro en el foro de primera instancia. Por tanto, las menores están protegidas por la orden de hogar seguro provisional que emitió el Tribunal de Primera Instancia en la sala de familia y que sigue vigente.

Si bien es cierto que el asunto litigioso en el que están enfrascadas las partes es apremiante, esto no es razón para permitir que se menoscabe el proceso apelativo que el legislador estableció. El Tribunal de Apelaciones puede atender este caso con la premura que se merece. Si resolviéramos los méritos del caso sin darle la oportunidad al Tribunal de Apelaciones para que ejerza su facultad revisora, estaríamos ignorando el mandato legislativo que establece un foro intermedio entre el Tribunal de Primera Instancia y el Tribunal Supremo. Sería quitarle *de facto* al Tribunal de Apelaciones la jurisdicción que le reconocimos *de jure*. Además, estaríamos atendiendo asuntos que las partes no han señalado ni argumentado ante nos, en menoscabo de sus derechos como litigantes.

Este resultado no menoscaba nuestra independencia de criterio ni nuestras facultades constitucionales. Por el contrario, luego de adjudicar que el Tribunal de Apelaciones tiene jurisdicción para atender el recurso, nos adherimos fielmente al esquema de ley respecto a la competencia de los foros apelativos y reconocemos que nuestra facultad para pautar el derecho no puede ejercerse a destiempo.

## VI

Por los fundamentos señalados, se expide el auto de *certiorari*, se revoca la sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, y se devuelve el caso a ese foro para que lo resuelva en los méritos de forma consolidada con el recurso KLCE200900153 entre las mismas partes, pendiente para su consideración.

Se dictará Sentencia de conformidad.


                              RAFAEL L. MARTÍNEZ TORRES
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oscar Crespo Quiñones

    Recurrido


      v.

                         CC-2007-1114

Arlene Santiago Velázquez

    Peticionaria


SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se expide el auto de *certiorari*, se revoca la sentencia del Tribunal de Apelaciones, Región Judicial de San Juan, y se devuelve el caso a ese foro para que lo resuelva en los méritos de forma consolidada con el recurso KLCE200900153 entre las mismas partes, pendiente para su consideración.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente con Opinión escrita a la que se unen la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oscar Crespo Quiñones

  Recurrido

  v.                          CC-2007-1114   Certiorari

Arlene Santiago Velázquez

  Peticionaria

Opinión Disidente emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON, a la cual se unen la Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez.

San Juan, Puerto Rico, a 31 de julio de 2009

En el día de hoy la mayoría del Tribunal incurre en un acto manifiesto de legislación judicial con el propósito de limitar la facultad de este Foro –único de entronque constitucional y máximo intérprete de las leyes y la Constitución– para solucionar las controversias que se encuentran ante su consideración. Específicamente, el Tribunal confecciona un mandato que denomina "legislativo" pero es realmente creación judicial, que le ordena a este Foro abstenerse de resolver en sus méritos una controversia en todo caso en que revoquemos la determinación del Tribunal de Apelaciones de declararse sin jurisdicción. Por entender que dicho proceder constituye una actuación *ultra vires* que

sienta una norma indebida de autolimitación judicial de este Tribunal y, a su vez, sujeta la verdadera controversia del caso de autos a ritualismos y tecnicismos procesales que prolongan innecesariamente los casos, disentimos.

I.

La relación de hechos que presenta este caso revela, sin duda, la verdadera "única controversia" que está ante la consideración del Tribunal: la incompatibilidad del procedimiento sumario de una acción de desahucio con una reclamación paralela de hogar seguro sobre el mismo bien inmueble. Veamos.

A.

El caso de epígrafe se originó tras el divorcio del Dr. Oscar Crespo Quiñones y la Sra. Arlene Santiago Velázquez hace más de dos años. Conforme a la sentencia de divorcio, la señora Santiago Velázquez, quien es ama de casa, tendría la custodia de las hijas de las partes, quienes actualmente son menores de edad. Al doctor Crespo Quiñones se le fijó una pensión alimentaria en beneficio de las menores y se le ordenó el pago de unas mensualidades a favor de la señora Santiago Velázquez, conforme a los términos de las capitulaciones matrimoniales suscritas entre ellos.

Desde el divorcio, la señora Santiago Velázquez ha residido en la propiedad que constituyó el hogar familiar, junto a las hijas procreadas durante el matrimonio y otra menor de edad hija suya. Este inmueble, en torno al cual

gira la controversia en el caso de autos, es propiedad privativa del doctor Crespo Quiñones. A pesar de que las partes habían acordado vender dicha propiedad, no pudieron materializar el acuerdo, sino que se enfrascaron en un conflicto respecto a las alternativas de vivienda presentadas por cada uno. Por ello, el doctor Crespo Quiñones presentó una demanda de desahucio en contra de la señora Santiago Velázquez.

En su contestación a la demanda, la señora Santiago Velázquez admitió que la propiedad en controversia pertenecía al doctor Crespo Quiñones. Sin embargo, adujo que tenía derecho a reclamarla como hogar seguro, pues aún estaba pendiente ante la Sala de Relaciones de Familia la determinación respecto al lugar donde viviría con las menores, por lo que el tribunal debía convertir la acción de desahucio a una ordinaria. El foro de instancia tomó conocimiento del expediente del caso ante la Sala de Relaciones de Familia. Luego de otros trámites, y tras concluir que se trataba de un asunto de Derecho, el tribunal dictó sentencia por las alegaciones en contra de la señora Santiago Velázquez.

Inconforme con ese dictamen, la señora Santiago Velázquez acudió ante el Tribunal de Apelaciones. A petición del doctor Crespo Quiñones, dicho foro desestimó el recurso por falta de jurisdicción, dado que su ex esposa no prestó la fianza en apelación requerida en casos de desahucio. Ello, a pesar de que la señora Santiago

Velázquez se opuso a dicha solicitud y arguyó que tanto la acción de desahucio como el requerimiento de la fianza eran contrarias a la obligación alimentaria de su ex esposo a favor de sus hijas. Asimismo, adujo que debía ser exonerada de la prestación de la fianza porque era insolvente, ya que no generaba ingresos y su ex esposo le retenía las mensualidades pactadas. Cabe señalar que mientras el asunto estaba pendiente en el Tribunal de Apelaciones la señora Santiago Velázquez presentó ante la Sala de Relaciones de Familia una moción en la que solicitó que se declarara hogar seguro la propiedad en controversia, por lo que le pidió al foro apelativo que tomase conocimiento judicial de ésta.

Ante la desestimación de su recurso apelativo, la señora Santiago Velázquez acudió ante nos y, en esencia, reprodujo los mismos argumentos esbozados ante el tribunal intermedio. Luego de que paralizáramos los procedimientos y le concediéramos un término al doctor Crespo Quiñones para que compareciera a mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia recurrida, éste compareció. Alegó que la señora Santiago Velázquez no es insolvente, pero admitió que retenía las referidas mensualidades y que aún estaba pendiente dilucidar adónde se mudarían las menores.

Mientras el presente recurso estaba ante nuestra consideración, el tribunal de instancia declaró el inmueble en controversia hogar seguro provisional. Posteriormente,

tras la celebración de una vista final, el foro de instancia adjudicó como hogar seguro una propiedad distinta a dicho inmueble. La señora Santiago Velázquez acudió al Tribunal de Apelaciones mediante un recurso de *certiorari* para cuestionar dicha determinación. El referido recurso aún se encuentra pendiente ante el foro apelativo, que ordenó la paralización de los procedimientos.

B.

Como se puede apreciar, el presente caso tiene la particularidad de que los mismos hechos dieron lugar al desarrollo de dos procedimientos paralelos e independientes sobre un mismo inmueble; a saber, uno sumario en el que se dilucida la procedencia de la demanda de desahucio que instó el doctor Crespo Quiñones, y otro ordinario en el que se ventila la reclamación de hogar seguro que presentó la señora Santiago Velázquez. Por ello, no debe perderse de vista que no estamos ante una demanda de desahucio común y corriente.

Por el contrario, se trata de una reclamación instada por un ex cónyuge en contra de otro quien, como consecuencia de los asuntos pendientes ante la Sala de Relaciones de Familia, permanece viviendo en el inmueble en controversia con las hijas menores de edad que ambos procrearon durante su matrimonio. Es decir, la acción de desahucio ante nuestra consideración es producto de los intentos infructuosos que realizaron las partes para llegar a un acuerdo respecto a la nueva vivienda de sus hijas

menores de edad. Por lo tanto, mediante la referida acción realmente se pretende resolver, de forma sumaria, las controversias que las partes tienen pendientes ante la Sala de Relaciones de Familia. Tal proceder constituye un uso indebido de los procesos judiciales que dilata la solución de dichas controversias.

Desafortunadamente, la Opinión mayoritaria se abstrae por completo de este marco fáctico y opta por enfrascarse en la creación de un "mandato legislativo" a todas luces incompatible con las facultades de este Tribunal. Cuando menos, este Foro debió examinar la interrogante de si, en principio, la acción sumaria de desahucio en aquellos casos en los que se invoca una reclamación de hogar seguro con probabilidad de prevalecer sería contraria a la firme política pública de proteger a los menores y a la familia. Adviértase que, conforme al estado de Derecho vigente, la acción de desahucio procederá en todo caso donde no haya conflicto de título, como ocurrió en el de autos. Ello no sólo le permitiría al padre demandante desahuciar a sus propios hijos del hogar en que han vivido gran parte de su vida sino que, además, acarrearía el absurdo resultado de autorizarle a evadir su obligación alimenticia hacia éstos.

A pesar de que estos asuntos debieron abordarse con rigor, la Opinión del Tribunal enuncia con desmesurada atención al aspecto procesal una norma que responde más al automatismo y a la miopía judicial que a la precisión jurídica. Dos aspectos requieren mayor atención de nuestra

parte. En primer lugar, la Opinión se ampara en un "esquema legislativo" –concebido por la propia mayoría del Tribunal– para resolver que es el Tribunal de Apelaciones "el foro que dispensa justicia apelativa en primer término". Por ello, la mayoría expone que la única controversia que le corresponde resolver a este Tribunal en el caso de autos es si dicho foro tenía jurisdicción para revisar el recurso de apelación de la señora Santiago Velázquez. **Contradictoriamente, la misma Opinión convierte su norma de abstención en un claro *dictum* pues, tras contestar esa interrogante en la afirmativa, se adentra en los méritos de la controversia y resuelve que en aquellos casos en que se reclame el derecho a hogar seguro sobre un bien objeto de una acción de desahucio el foro de instancia deberá paralizar la consideración de la acción sumaria hasta que se dilucide el asunto sobre hogar seguro.** Examinemos con detenimiento estos aspectos.

## II.

Al amparo de varias disposiciones de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24 *et seq*, el Tribunal intenta derivar un supuesto "mandato legislativo" que limita nuestra autoridad para disponer de las controversias que se presenten ante nos. Sin embargo, no existe disposición alguna en dicha ley que nos permita suscribir la postura del Tribunal.

La Opinión de la mayoría entiende necesario "resaltar" que nuestro sistema judicial es uno unificado, integrado en un Tribunal General de Justicia y compuesto por el Tribunal de Primera Instancia, el Tribunal de Apelaciones y este Tribunal. Expone, por si lo habíamos olvidado, el orden de presentación de un caso ante los foros judiciales: primero ante el tribunal de instancia, luego ante el tribunal apelativo y por último ante este Foro. Estas dos sencillas premisas –elementales en lo que se refiere a la jerarquía administrativa de la justicia en nuestro país– le bastan a la mayoría para idear un presunto "mandato legislativo" que establece al Tribunal de Apelaciones como el foro que dispensa justicia apelativa en primer término.

No obstante, un examen sosegado de las disposiciones de ley que cita el Tribunal sólo revela que el único "mandato legislativo" en lo que concierne al caso de autos ha sido regular nuestra facultad para entender en determinados asuntos, es decir, la competencia de este Foro. Nada hay en la ley que regule los procesos decisorios o limite las facultades de este Tribunal para formular soluciones sobre los asuntos que, conforme al estatuto, han sido traídos ante su consideración. Nada hay en la ley que nos dicte cómo resolver determinada controversia.

En definitiva, no podría ser de otra forma. El concepto de "mandato legislativo" al que de manera forzada alude el Tribunal implicaría una actuación contraria a la

doctrina de separación de poderes, la cual prohíbe la interferencia de una rama constitucional de gobierno en los asuntos de otra. Colón Cortés v. Pesquera, 150 D.P.R. 724 (2000); Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998). Aún más, atentaría contra uno de los pilares de dicha doctrina y principio trascendental de nuestro sistema democrático: la independencia del poder judicial frente a las ramas políticas del Gobierno.

La creación, composición, funcionamiento y facultades de este Foro se consagran en nuestra Constitución, primera fuente de Derecho procesal. Art. V, Secs. 1-7 Const. E.L.A., L.P.R.A., Tomo 1. Tanto el texto claro del Artículo V de nuestra Constitución como el Diario de Sesiones de la Convención Constituyente reflejan que **la independencia judicial fue el criterio fundamental para lograr "la eficiencia del poder judicial como instrumento democrático del pueblo" y posibilitar la función de esta Rama de garantizar "un régimen de derecho a diferencia de un régimen de fuerza o de hombres".** (Énfasis nuestro). 1 Diario de Sesiones de la Convención Constituyente 452 (2003). **Asimismo, es incuestionable que este Tribunal, como foro constitucional de última instancia, es el máximo intérprete de las leyes y de la Constitución y, por ende, tiene la facultad exclusiva de pautar las normas jurisprudenciales en nuestra jurisdicción. Esa autoridad suprema no puede condicionarse a mandato legislativo**

**alguno, ni siquiera por fíat judicial como hoy decide hacerlo la mayoría.**

A tono con dichos principios, desde <u>Coll v. Picó</u>, 82 D.P.R. 27 (1960), este Tribunal estableció que **"la función de hallar el derecho es privativa del juez y en virtud de esa facultad el tribunal está en libertad de aplicar la norma que estime pertinente y adecuada"**. (Énfasis suplido.) <u>Coll v. Picó</u>, *supra*, pág. 37. Incluso, según resolvimos en aquella ocasión, lo anterior opera "aunque sea separándose de las alegaciones, admisiones o acuerdos de los litigantes". *Íd.* De forma similar, hemos señalado en innumerables ocasiones que al resolver un caso ante nuestra consideración, no tenemos que limitarnos a la evaluación de los errores señalados por las partes. Nuestra obligación es velar por que se le haga justicia a aquella parte que, de acuerdo con nuestro más sano criterio, tiene derecho a ella. <u>Vega v. Yiyi Motors, Inc.</u>, 146 D.P.R. 373, 383 (1998); <u>Ríos Quiñones v. Adm. Servs. Agrícolas</u>, 140 D.P.R. 868, 871 (1996); <u>Rodríguez Cruz v. Padilla Ayala</u>, 125 D.P.R. 486, 511-512 (1990). Por ello, en aras de impartir justicia, tenemos la facultad inherente de resolver errores patentes aunque las partes no los hayan señalado. <u>Hons. Castro, Cabán v. Depto. de Justicia</u>, 153 D.P.R. 302, 312 (2001).

De otra parte, la interpretación que hace la Opinión del Tribunal sobre el Art. 2.001 de la Ley de la Judicatura para equiparar las facultades del Tribunal de Apelaciones

con las de este Foro no guarda armonía alguna con el rango constitucional que de forma exclusiva pertenece al Tribunal Supremo de Puerto Rico. Al disponer que "el Tribunal General de Justicia está compuesto por un (1) foro de instancia y dos (2) foros revisores, a saber: el Tribunal de Apelaciones y el Tribunal Supremo" se soslaya la naturaleza constitucional de este Foro y, por tanto, **se desvirtúa el texto claro de la referida disposición**. Lo que textualmente se expresa en ésta es que "[e]l Poder Judicial del Estado Libre Asociado de Puerto Rico … [e]stará compuesto por el Tribunal Supremo como tribunal de última instancia, el Tribunal de Apelaciones como tribunal intermedio y por el Tribunal de Primera Instancia". 4 L.P.R.A. sec. 24b. Ello es cónsono con las disposiciones pertinentes de nuestra Constitución. Art. V, Secs. 1, 2, 3 Const. E.L.A., *supra*.

Ciertamente, la naturaleza de las funciones que realiza este Foro y las que realiza el Tribunal de Apelaciones son inherentemente distintas. Las funciones del Tribunal de Apelaciones, como foro intermedio, responden a las consideraciones particulares de la ley que lo creó. La propia Ley de la Judicatura dispone que el Tribunal de Apelaciones "cumplirá el propósito de proveer a los ciudadanos de un foro apelativo mediante el cual un panel de no menos de tres (3) jueces revisará" los dictámenes que se establecen en el estatuto. 4 L.P.R.A. sec. 24u. Ello, con el objetivo de facilitar el acceso de

la ciudadanía a los procesos judiciales. *Íd*. Véase, además, 4 L.P.R.A. sec. 24w. Así lo reconoció este Tribunal en el marco de la anterior Ley de la Judicatura de Puerto Rico de 1994. <u>Depto. de la Familia v. Shrivers Otero</u>, 145 D.P.R. 351, 356 (1998).

A la luz de dicho propósito, hemos expresado que la función principal del foro apelativo intermedio es "revisar las decisiones del foro de instancia para asegurarse de que sean justas y que encuentren apoyo en la normativa establecida por este Tribunal". *Íd*., pág. 357. Entre las funciones de dicho tribunal se han reconocido: corregir los errores del tribunal sentenciador; servir como agente catalítico en las revisiones de la doctrina y de la ley; advertir sobre problemas que plantee una ley; destacar situaciones que requieran reglamentarse por la Asamblea Legislativa; identificarle a este Tribunal áreas en que se hace imperativo el cambio normativo; permitir que este Tribunal tenga un mayor desahogo y pueda servir al máximo en su función social de pautar e interpretar el Derecho; y ayudar en la descongestión de casos de este Tribunal. *Íd*., págs. 356-357, n.2.

A pesar de la importante labor que, a través de dichas funciones, rinde el Tribunal de Apelaciones para nuestro sistema de justicia, la facultad de pautar y unificar el Derecho es exclusiva de este Foro. Con el mayor respeto a las funciones que realiza el Tribunal de Apelaciones, dicho foro es, según hemos expresado anteriormente, "un órgano

instituido para administrar justicia a los particulares". *Íd.*, pág. 358, citando a J.A. Cuevas Segarra, <u>Práctica Procesal Puertorriqueña: Práctica Apelativa</u> (análisis del Reglamento del Tribunal de Circuito de Apelaciones), 2da ed. rev., San Juan, Pubs. J.T.S., 1995, pág. 23. En palabras del Lcdo. Hiram Sánchez Martínez, ex Juez del antiguo Tribunal de Circuito de Apelaciones:

> El Tribunal de … Apelaciones no existe para pautar el derecho, pues, esa función protagónica sólo incumbe al Tribunal Supremo. La función primordial del Tribunal de … Apelaciones es corregir los errores que hubiese podido cometer el Tribunal de Primera Instancia al adjudicar un caso particular, concreto, de determinados litigantes sin pretensiones de obligarse a sí mismo o a otros jueces en otros casos a resolver de conformidad con lo resuelto en éste. El Tribunal de … Apelaciones sólo existe para establecer la "ley del caso". H. Sánchez Martínez, <u>Práctica Jurídica de Puerto Rico: Derecho Procesal Apelativo</u>, LexisNexis, 2001, pág. 20.

De ahí que, como establece la propia Ley de la Judicatura, las sentencias y resoluciones del Tribunal de Apelaciones sólo podrán citarse con carácter persuasivo. 4 L.P.R.A. sec. 24x.

Conforme a estos principios, resulta improcedente la teoría esbozada por la Opinión del Tribunal a los efectos de que el legislador estableció un mandato que restringe nuestra facultad para proveer una solución adecuada a la controversia que nos atañe en el caso de autos. Ese mandato sólo existe porque lo ha promulgado la mayoría en el día de hoy, mediante una extrapolación de las

disposiciones contenidas en la Ley de la Judicatura sobre la competencia de este Tribunal.

De hecho, la decisión que emite el Tribunal en el caso de autos es contraria a su reciente actuación en Suárez Cáceres v. C.E.E., res. el 9 de junio de 2009, 2009 TSPR 97. Como expusimos en nuestros disensos en aquella ocasión, en Suárez Cáceres el señalamiento principal esbozado por el peticionario fue, precisamente, que el foro apelativo había incidido al desestimar su recurso por falta de jurisdicción. Sin embargo, aunque se revocó la determinación del tribunal apelativo sobre ese asunto jurisdiccional, una mayoría de este Foro no vaciló en ignorar el "mandato legislativo" en el cual hoy se basa la Opinión del Tribunal y entró en los méritos de una controversia que jamás estuvo ante su consideración. En efecto, sin pretensión de consistencia en las decisiones de este Tribunal, la Opinión emitida hoy invoca una norma incompatible con su proceder en dicho caso. Esta actuación –lejos de crear un estado de Derecho– crea una incertidumbre peligrosa sobre el verdadero *ratio decidendi* de la mayoría del Tribunal. Peor aún, suscita la interrogante de si realmente la normativa pautada depende del resultado de la decisión.

III

A.

Por otro lado, basta con examinar la Opinión del Tribunal para notar que la norma de abstención proclamada

no tarda en desvanecerse. Ello, pues aunque se expresa que la única controversia que debemos atender es la que se refiere a la jurisdicción del Tribunal de Apelaciones, el Tribunal le ordena a dicho foro consolidar este caso con el recurso de *certiorari* que presentó la señora Santiago Velázquez para impugnar la determinación de hogar seguro. De manera más contradictoria aún, el Tribunal resuelve que en aquellos casos en que la parte demandada en la acción sumaria de desahucio reclame el bien objeto de dicha acción como hogar seguro, el foro de instancia deberá paralizar la consideración del caso de desahucio hasta que se dilucide en la Sala de Relaciones de Familia el asunto de hogar seguro.

Dicho proceder ignora la naturaleza sumaria del procedimiento de desahucio, conforme a la cual, de no haber conflicto de título, procede declarar la acción con lugar. A nuestro juicio, según se colige de la jurisprudencia de este Foro sobre los procedimientos de desahucio, lo adecuado en los casos en que se presente una reclamación de hogar seguro sobre el inmueble objeto de la acción sumaria es que el juzgador ausculte los méritos de dicha reclamación y, discrecionalmente, traslade el caso a la Sala de Relaciones de Familia. Nos explicamos.

Como es sabido, el desahucio es una acción especial de carácter sumario, pues responde al interés gubernamental de atender prioritariamente la causa de acción de aquel titular que ve interrumpido su derecho a poseer y disfrutar

un inmueble de su propiedad. 32 L.P.R.A. sec. 2821 *et seq*; Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234-235 (1992); Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 749 (1987).  En vista de que lo único que se intenta recobrar mediante la referida acción sumaria es la posesión del inmueble, en reiteradas ocasiones hemos establecido que los conflictos de título no pueden dilucidarse en un procedimiento de desahucio. C.R.U.V. v. Román, 100 D.P.R. 318, 321 (1971); Negrón v. Corujo, 67 D.P.R. 398, 403 (1947); Escudero v. Mulero, 63 D.P.R. 574, 588 (1944). Existe tal conflicto cuando el demandado presenta prueba suficiente que tienda a demostrar su derecho a ocupar el inmueble en controversia y que tiene un título tan bueno o mejor que el del demandante. C.R.U.V. v. Román, *supra*, pág. 322.  En esos casos, la controversia debe dilucidarse mediante un juicio ordinario. Lemar S.E. v. Vargas Rosado, 130 D.P.R. 203, 209-210 (1992).

De ordinario, la defensa de conflicto de título no debe extenderse a casos en que el demandado, siendo precarista, no tiene posibilidad de título a su favor, debiendo demostrar que tiene al menos lo que hemos llamado un "color" de título. C.R.U.V. v. Román, *supra*, págs. 327-328; Lippitt v. Llanos, 47 D.P.R. 269 (1934).  Sin embargo, en casos apropiados le hemos permitido a un demandado presentar defensas íntimamente relacionadas con la causa del desahucio, de forma tal que el procedimiento se torne en uno ordinario.  Véanse, Jiménez v. Reyes, 146 D.P.R. 657

(1998); <u>Turabo Ltd. Partnership v. Velardo Ortiz</u>, *supra*; <u>Mora Dev. Corp. v. Sandín</u>, *supra*. En tales casos, nuestra decisión ha respondido a consideraciones o hechos específicos que generalmente no están presentes en los desahucios, los cuales han hecho necesaria una interpretación más amplia. <u>Mora Dev. Corp. v. Sandín</u>, *supra*, pág. 753. En este sentido, hemos señalado que "el criterio de defensas limitadas [...] nunca tuvo a los ojos del juez un carácter absoluto". *Íd.*, págs. 747-748.

No obstante lo anterior, la necesidad de convertir el procedimiento sumario en uno ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá establecer prima facie los méritos de su defensa. *Íd.*, pág. 750; véanse, además, <u>Marín v. Montijo</u>, 109 D.P.R. 268 (1979); <u>Brunet v. Corte</u>, 45 D.P.R. 901 (1933). Tampoco puede redundar en la creación de una regla automática. Por ello, la guía en estos casos deberá ser el sano discernimiento judicial. <u>Turabo Ltd. Partnership v. Velardo Ortiz</u>, *supra*, pág. 241. Concretamente, una vez se esgrimen las defensas pertinentes, **"el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario"**. *Íd.*, págs. 245-246. (Énfasis nuestro).

De lo anterior se desprende que, ante el estrecho marco provisto en nuestro ordenamiento para los pleitos de desahucio, hemos establecido que el sano discernimiento

judicial será la mejor guía. A fin de cuentas, no debe perderse de vista que, como toda acción sumaria, el desahucio es un procedimiento diseñado para proveer un trato privilegiado al demandante, pues el legislador ha otorgado prioridad a la reivindicación de su derecho. Turabo Ltd. Partnership v. Velardo Ortiz, *supra*, pág. 234. Ello, sin embargo, no impide al juzgador matizar –en el ejercicio de su sana discreción– la rapidez procesal que caracteriza a estos procedimientos en aquellos casos en que declarar con lugar la acción sumaria sería contrario a un interés tutelado por el Estado. Véanse, Turabo Ltd. Partnership v. Velardo Ortiz, *supra*; Mora Dev. Corp. v. Sandín, *supra*.

Precisamente, en el caso de autos existe un interés de superior jerarquía que el Estado protege mediante la figura de hogar seguro: el bienestar y el mejor interés de los menores y la familia. Véase Art. 109-A del Código Civil, 31 L.P.R.A. sec. 385a. Desde Carrillo v. Santiago, 51 D.P.R. 545, 547 (1937), reconocimos –con la equidad como criterio rector– que al padre custodio le cobija el derecho de reclamar como hogar seguro la propiedad ganancial mientras los hijos sean menores de edad. Esta norma fue reafirmada posteriormente en Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655 (1978), caso en el cual resolvimos que la preservación de la vivienda familiar supera el derecho de propiedad del cónyuge en los activos de la extinta sociedad ganancial. Ello, pues **"el derecho de dominio no es atribución absoluta**

**de su titular y [...] está supeditado a intereses sociales de orden superior**". <u>Cruz Cruz v. Irizarry Tirado</u>, *supra*, pág. 660. (Énfasis nuestro).

En atención a estos intereses de política pública que guiaron nuestra jurisprudencia, hemos resuelto que el derecho a hogar seguro que contempla el Artículo 109-A no sólo es atribuible a una propiedad ganancial. Dicho derecho puede atribuirse sobre una propiedad perteneciente a una comunidad de bienes, habida entre los ex cónyuges antes del matrimonio, y sobre la vivienda familiar constituida por un inmueble propiedad de uno de los ex concubinos, aun cuando le pertenezca de forma privativa. <u>Candelario v. Muñiz</u>, res. el 7 de junio de 2007, 2007 TSPR 117; <u>Rodríguez v. Pérez</u>, 161 D.P.R. 637 (2004); véase, además, <u>Irizarry v. García</u>, 58 D.P.R. 280, 284 (1941).

La ruptura del vínculo que unía a los padres –generado en virtud de una relación matrimonial o de concubinato– puede acarrear cierta inestabilidad respecto a la vivienda. Ante el riesgo de que los hijos se vean separados de lo que constituyó su residencia habitual, el centro de vida de la familia, el lugar que identifican como su entorno social y afectivo y, en muchos casos, la única propiedad que han conocido como su hogar, el derecho a hogar seguro opera como medida protectora para proveer a los hijos un ambiente familiar constante, continuo y estable.

Recientemente, en <u>Candelario v. Muñiz</u>, *supra*, dimos especial énfasis a la interpretación liberal y expansiva

que hemos impartido al derecho de hogar seguro, y catalogamos la vivienda familiar como un bien de goce colectivo al servicio de la familia. Allí resolvimos que el interés propietario que pueda tener un padre sobre la vivienda familiar que se reclama como hogar seguro no es un factor determinante al dilucidar si procede dicha reclamación. Ello, pues la propiedad familiar trasciende aspectos patrimoniales, independientemente del origen del inmueble o de la titularidad que sobre él se ostente. Es decir, **"el bienestar de los hijos es un interés de mayor jerarquía que cualquier interés propietario que puedan tener los padres"**. Candelario v. Muñiz, *supra*.

A pesar de la preeminencia de los intereses antes reseñados, la naturaleza sumaria de la acción de desahucio no provee el marco procesal adecuado para vindicar los mismos. Ello implica que, en casos en los cuales se esgrime una defensa de hogar seguro con probabilidad de prevalecer, el trato privilegiado que goza el demandante en el trámite de desahucio da al traste con la firme política pública de proteger a los menores y a la unidad familiar. Ciertamente, se trataría de una controversia que no es susceptible de ventilarse en un procedimiento sumario. Véase Lemar S.E. v. Vargas Rosado, *supra*, págs. 209-210. Como mencionamos anteriormente, en ocasiones hemos flexibilizado el estrecho marco decisorio que rige las acciones de desahucio, ordenando la celebración de juicios ordinarios cuando hay intereses gubernamentales

involucrados y siempre en atención a resultados justos. Véanse Jiménez v. Reyes, *supra*; Turabo Ltd. Partnership v. Velardo Ortiz, *supra*; Mora Dev. Corp. v. Sandín, *supra*. En tales casos, la herramienta idónea para el juzgador es **el sano discernimiento judicial**. Véase Turabo Ltd. Partnership v. Velardo Ortiz, *supra*.

Somos del criterio, por lo tanto, que una vez se reclama el derecho a hogar seguro por el padre custodio en una acción de desahucio instada en su contra por el padre no custodio titular del inmueble, **el juzgador deberá auscultar los méritos de dicha reclamación y, discrecionalmente, trasladar el caso a la Sala de Relaciones de Familia. Es decir, el juzgador deberá determinar si de la faz de la reclamación de hogar seguro la parte demandada podría prevalecer debido a la presencia de alguna de las circunstancias contempladas en el Artículo 109-A del Código Civil,** a saber: que es padre custodio de hijos menores de edad, o de hijos incapacitados, o de hijos dependientes por razón de estudios hasta alcanzar veinticinco años de edad, y que el inmueble en controversia constituyó la vivienda familiar. 31 L.P.R.A. sec. 385a.

Contrario al curso de acción que adopta la Opinión del Tribunal, la solución que proveeríamos a este asunto no desnaturaliza el carácter sumario de las acciones de desahucio y evita que se desarrollen dos procedimientos paralelos e inconsistentes. El examen sobre los méritos de la reclamación de hogar seguro podría llevarse a cabo

requiriendo la comparecencia oral o escrita de las partes en un plazo breve, de manera que no se dilate el procedimiento innecesariamente. De entender que los criterios mencionados están presentes, el juzgador de instancia deberá trasladar el asunto a la Sala de Relaciones de Familia, de forma tal que dicha Sala dilucide la controversia de forma plenaria. De lo contrario, procedería la continuación del procedimiento sumario.

B.

En el caso de autos, consideramos que debido a la solicitud de hogar seguro de la señora Santiago Velázquez, y luego de tomar conocimiento del caso ante la Sala de Relaciones de Familia, el foro de instancia tuvo ante sí una reclamación de hogar seguro que, de su faz, cumple con los requisitos del Artículo 109-A del Código Civil, *supra*. Ello era suficiente para apartar el ánimo del juzgador del rigor que caracteriza el trámite sumario de desahucio. Ante la alegación de la señora Santiago Velázquez, el foro de instancia debió al menos ordenar a las partes que se expresaran al respecto, aun en un término breve. No procedía, por tanto, decretar el desahucio sumario, tal como hizo el foro de instancia. Del mismo modo, tampoco procedía que el foro apelativo se declarase sin jurisdicción, pues ante la indigencia de la señora Santiago Velázquez debió eximírsele del requisito de prestar la fianza en apelación.

A la luz de todo lo anterior, y dado que durante el trámite del presente recurso la Sala de Relaciones de Familia realizó una determinación sobre el derecho a hogar seguro solicitado que aún no es final y firme, expediríamos el auto de *certiorari*, revocaríamos la sentencia del Tribunal de Apelaciones y desestimaríamos sin perjuicio la demanda de desahucio instada por el doctor Crespo Quiñones. **Cabe aclarar que este curso de acción no pretende prejuzgar la controversia sobre la reclamación de hogar seguro, asunto que aún está pendiente ante los foros *a quo*.**

Resulta incomprensible cómo en el día de hoy el Tribunal renuncia a su función de impartir justicia y —al amparo de un acto patente de legislación judicial— opta por imponerle una camisa de fuerza a nuestros procesos decisorios y a nuestra facultad de proveer soluciones adecuadas a los recursos que se encuentran ante nuestra consideración. Aunque la existencia del tribunal apelativo intermedio en nuestra jurisdicción ha generado varias legislaciones en torno a su creación, funciones y facultades, la potestad de este Foro de llegar a las conclusiones que en Derecho y en justicia procedan ha permanecido incólume.

Peor aún, la mayoría parece desconocer el alcance de nuestras facultades como máximo y último Foro de nuestro país. Si bien el asunto principal que dio lugar al recurso ante nos versa sobre la procedencia de la desestimación decretada por el foro apelativo, lo cierto es que la

verdadera controversia que nos ocupa gira en torno a la improcedencia de la acción sumaria de desahucio. El Tribunal se resiste a atender lo anterior, a tal punto que ignora que la señora Santiago Velázquez sí incluyó dicha controversia como una de las cuestiones jurídicas planteadas en su petición de *certiorari*, formulándola de la siguiente manera: "si puede un padre … con la obligación de proveer vivienda para sus hijas menores de edad, solicitar el desahucio de la madre custodia y, por ende, de éstas y puede exigirles el pago de una fianza".

Como bien reconoce la Opinión del Tribunal, el "evitar la multiplicidad de pleitos" y "adjudicar en una causa las distintas reclamaciones de las partes" constituye un principio cardinal en nuestro ordenamiento procesal. No obstante, la decisión del Tribunal resulta contraria a dicho principio. Al devolver el caso de autos al foro recurrido, la mayoría decide postergar la solución de una controversia de estricto derecho, no resuelta aún, que no tardará en regresar a este Tribunal. Evidentemente, ello torna el complejo y delicado proceso en el que se han involucrado las partes en uno más oneroso, obligándolas a incurrir en gastos adicionales por recursos apelativos que sólo obedecen a un mandato legislado por el Tribunal y a una visión muy limitada de la función de este Foro.

En fin, nos vemos impedidos de suscribir un criterio que, amparado en tecnicismos procesales, relega a un segundo plano nuestro deber de proteger intereses de

superior jerarquía. Como no podemos refrendar un acto de legislación judicial que autolimita la facultad de este Tribunal para dispensar justicia con rapidez, disentimos.


Federico Hernández Denton
Juez Presidente